986 F.2d 1423
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Derrick Leonard WILLIS, Defendant-Appellant.
 No. 92-5334.
 United States Court of Appeals, Sixth Circuit.
 Feb. 9, 1993.
 
 Before BOGGS and SILER, Circuit Judges, and LAMBROS, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-Appellant Derrick Leonard Willis appeals his conviction on two counts for violations of 21 U.S.C. § 841(a)(1), distributing cocaine base (crack). Count Two occurred within one thousand feet of a school, so it also charged a violation of 21 U.S.C. § 860. Defendant has raised several issues involving the court's response to questions by the deliberating jury and the admission of evidence that defendant used the nickname "Dee." For reasons set out hereinafter, we AFFIRM the judgment of the district court.
 
 Discussion
 
 2
 1. Playing Selected Portions of Trial Testimony.
 
 
 3
 After it had begun deliberating, the jury requested "a copy of the testimony of Jeannie Larkin," the DEA Task Force agent who monitored and recorded the drug transactions. This was not technically feasible so the court proposed to supply the jury with whatever "certain part" of Larkin's testimony it desired. The jury modified its request and asked "to hear the part of [Larkin's] testimony [pertaining to the time] when she was talking to Mr. Willis in the holding cell." The court verified the jury's request, played only the requested portion, and repeated an earlier admonition to "consider the evidence taken as a whole." In this way, the trial court carefully determined that limited excerpts of Larkin's testimony satisfied the jury's original, broader request and played those excerpts. Willis now claims that the district court erred by unduly emphasizing the played portions of the testimony and by exposing him to the danger that these portions would be taken out of context.
 
 
 4
 As a threshold matter, the decision to read a portion of a witness's testimony to a deliberating jury is "within the trial court's discretion and reviewable only for an abuse of that discretion." United States v. Thomas, 875 F.2d 559, 563 n. 2 (6th Cir.), cert. denied, 493 U.S. 867 (1989). This aspect of the trial judge's discretion is based on his superior ability "to determine whether the 'beneficial effects from allowing the jury to review a part of the transcript outweigh the risk that the jury will give undue weight to that part of the evidence.' " United States v. De Luca, 692 F.2d 1277, 1286 (9th Cir.1982), quoting United States v. An Article of Drug, etc., 661 F.2d 742, 746 (9th Cir.1981). The trial court also must account for the risk that "the limited testimony that is reviewed may be taken out of context" and consider both the reasonableness of the jury's request and the difficulty of complying with it. United States v. Padin, 787 F.2d 1071, 1076 (6th Cir.) (citations omitted), cert. denied, 479 U.S. 823 (1986).
 
 
 5
 The district court did not abuse its discretion by playing portions of a tape of Agent Larkin's trial testimony. First, the district court "dissipate[d] any taint which may have resulted" from playing the "portions of the testimony which the jury requested" by admonishing the jury to consider all the evidence. See United States v. Anderson, 782 F.2d 908, 917 (11th Cir.1986). Furthermore, unlike cases finding abuse of discretion, the jury in this case was not susceptible to undue influence because it had not indicated any inability in reaching a verdict. See Padin, 787 F.2d at 1077. Finally, the testimony played in this case did not contain comments of the court which could have influenced a guilty verdict. See id., citing Henry v. United States, 204 F.2d 817, 820-21 (6th Cir.1953). Therefore, the only fact which might distinguish this case from Padin, a case affirming the decision to read specific and limited testimonial excerpts to a deliberating jury, is that this case involved taped instead of transcribed testimony.
 
 
 6
 Willis cites United States v. Binder, 769 F.2d 595 (9th Cir.1985), a case in which a district court was held to have abused its discretion in unduly emphasizing taped testimony by replaying it during jury deliberations. However, Binder discussed videotaped, not audiotaped testimony. Id. at 600-01. Furthermore, Binder treated videotaped testimony as "unique" and limited itself to special facts involving evidence of molestation presented through the videotaped testimony of children. Id. In that case, "the videotape was the functional equivalent of live testimony and [in this sense was] not analogous to an audiotape." Id. at 601 n. 1. Because the videotape was the functional equivalent of live testimony and because "it would have been impermissible to allow a live witness to enter the jury room to repeat his or her testimony," Binder did not allow replay. Id. On the other hand, the playing of audiotaped testimony to juries upon their request has been upheld. Id. at 604 (citations omitted) (Wallace, J., dissenting).
 
 
 7
 In sum, there are several reasons why the court's actions did not, in this case, unduly emphasize testimony in a manner constituting abuse of discretion. Here, an audio tape of live testimony was played at the jury's request. No transcript was available and the trial court warned the jury to consider the evidence as a whole. Furthermore, it is not alleged that the portion of the testimony that the jury requested contained comments which could have influenced a guilty verdict. Finally, this case does not involve the replay of evidence where replay could be considered the functional equivalent of live testimony.
 
 
 8
 Besides asserting that some evidence was unduly emphasized by allowing the jury to hear the recorded testimony, Willis also claims that playing the tape exposed him to the danger that testimony would be taken out of context. This danger obviously presents itself whenever a portion of a witness's testimony is read or played. Nevertheless, Willis does not describe how the presence of this danger harmed him and he cites no cases in which a district court was found to have abused its discretion on this ground. As Padin suggested, the presence of this danger is a consideration properly addressed to the district court's discretion. Padin, 787 F.2d at 1076-77. Its mere presence is no basis for reversal.
 
 
 9
 2. Refusal to Play Cross-Examination Testimony.
 
 
 10
 Although defense counsel objected to the playing of parts of the testimony pursuant to the jury's request, when the court declared it would have portions of the direct testimony played for the jury, defense counsel then moved the court to play the cross-examination of the witness. The court denied the motion because the jury did not ask for that part of the testimony.
 
 
 11
 Willis's right to confront and cross-examine witnesses was not abridged when the district court refused to play Larkin's cross-examination testimony. Willis correctly states that the rights of confrontation and cross-examination are fundamental requirements of a fair trial and are protected by the Sixth Amendment. Parker v. Gladden, 385 U.S. 363 (1966). However, he cites no authority suggesting that a trial court's decision to read or play testimony implicates the Sixth Amendment. Furthermore, Willis had an opportunity to cross-examine Larkin at trial, the jury did not request cross-examination testimony, and the jury was assured that it could hear more testimony if it desired. Thus, the normal "undue emphasis" analysis applies, and there was no abuse of discretion. See United States v. Wright-Barker, 784 F.2d 161, 174 (3d Cir.1986).
 
 
 12
 3. Directing a Verdict through Judicial Commentary.
 
 
 13
 The district court instructed the jury that, as to Count Two, the government had to prove each of the following elements beyond a reasonable doubt:
 
 
 14
 First, the Defendant knowingly and intentionally distributed cocaine base, crack. Second, at the time of such distribution, the Defendant knew that the substance being distributed was cocaine base, crack. And, third, the distribution of the controlled substance occurred in or on or within one thousand feet of the real property comprising a public or private university.
 
 
 15
 In this regard, the jury requested to rehear part of a surveillance tape recorded on June 10, 1991, at the University of Tennessee at Chattanooga. To determine whether the requested portion had been replayed, the judge asked if the tape, which was being replayed, had been replayed to the point where the individuals on the tape had left the university.[1] Since it had, the tape was shut off. Willis now argues that the district court's question effectively directed a verdict on the third element of Count Two.
 
 
 16
 The district court did not direct a verdict on an element of the offense alleged in Count Two through its commentary. The Constitution condemns statements which direct a verdict for the government on an element of a charged offense. United States v. Mentz, 840 F.2d 315, 320 (6th Cir.1988). However, the district court did not direct a verdict in this case because it did not mislead the jury into thinking that it could not render a verdict for Willis on the basis that distribution of a controlled substance did not occur within one thousand feet of the UTC campus.[2]
 
 
 17
 In Mentz, a trial court was held to have erroneously directed a verdict when it clearly and unequivocally instructed the jury that one element of a bank robbery charge was satisfied. Id. This instruction "left no room for the jury to believe otherwise" and thus "relieved the government of establishing, and the jury from finding beyond a reasonable doubt, every essential element" of the crime charged. Id. On the other hand, Mentz acknowledged that a trial judge may comment on the evidence where "his remarks do not convey the impression that they are established truths, such that the jury may not deviate from them." Id. at 321-22 (citation omitted). Comments are impermissible only when they leave no room for the jury to decide an issue. Id. at 322.
 
 
 18
 Mentz marked the boundary between permissible and impermissible commentary by distinguishing itself from United States v. Sliker, 751 F.2d 477 (2d Cir.1984), cert. denied, 471 U.S. 1137 (1985), a case in which a district judge did not erroneously direct a verdict through his commentary. In Sliker, the judge twice stated all the elements of the crime that the government was required to prove. Id. at 483. "Between these two statements, he observed that 'certain facts are not disputed,' among which was that [one of the elements needed to prove the crime was satisfied]." Id. Mentz was distinguished from Sliker because "the district court in Mentz's trial never specifically instructed the jury that the government was required to prove beyond a reasonable doubt [that the element at issue was satisfied]." Mentz, 840 F.2d at 321. Furthermore, while the Sliker court's comment left open the possibility that the element it spoke of was not satisfied on the date of the crime, the trial judge in Mentz unequivocally stated that the element spoken of was satisfied. Id. Finally, in Sliker, the parties raised no genuine dispute as to the element spoken of by the judge. Id. at n. 11.
 
 
 19
 Applying the law to this case shows that the district judge did not err. First, as in Sliker, the judge instructed the jury that the government was required to prove each element of the crime charged. The judge also advised the jury that "nothing that [he had] said or done during the trial was meant to influence [its] decision in any way" and that his "comments and questions [we]re not evidence." Second, context reveals that the court did not unequivocally state that the element at issue was satisfied. The jury had designated a portion of the audiotape it wanted to hear. For the sake of convenience, this portion was variously called the part "when they were supposedly at UTC" and "when they were at UTC." In an effort to determine if the desired portion had been played, the judge asked the following question: "They're leaving UTC, right?" While the question assumes a disputed fact, it falls short of an unequivocal elemental declaration. Finally, as in Sliker, the court's statement concerned an element which was not genuinely disputed. Willis claimed he did not commit the crime but did not dispute that it occurred at UTC. For all of these reasons, the district court's comment was permissible.
 
 
 20
 4. Evidence that Willis used the Nickname "Dee."
 
 
 21
 During the booking process, Agent Larkin learned that Willis used the nickname "Dee." This evidence was damaging to Willis's mistaken identity defense. Nevertheless, and even though the government did not notify Willis of the evidence until the night before trial, it was allowed to present the evidence at trial. Willis argues that the district court erred in admitting this evidence.
 
 
 22
 The district court did not err in admitting evidence that Willis used the nickname "Dee." The government's evidence was indisputably subject to the district court's discovery order of September 16, 1991, and the government was therefore under a continuing obligation to disclose this evidence:
 
 
 23
 (c) Continuing Duty to Disclose. If, prior to or during trial, a party discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under this rule, such party shall promptly notify the other party or that other party's attorney or the court of the existence of the additional evidence or material.
 
 
 24
 Fed.R.Crim.P. 16(c). Willis argues that the government's conduct violated Rule 16 and was so damaging to his mistaken identity defense that the district court erred in failing to exclude it. However, even if the government violated its Rule 16 disclosure obligation, the district court did not abuse its discretion in admitting the disputed evidence.[3]
 
 
 25
 As a threshold matter, the decision whether to impose sanctions under Rule 16(d)(2) for failure to comply with a discovery order is within the trial court's discretion. United States v. Glover, 846 F.2d 339, 342 (6th Cir.), cert. denied, 488 U.S. 982 (1988). This discretion derives from the fact that, faced with a violation of Rule 16, a court may "permit discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances." Fed.R.Crim.P. 16(d)(2). In considering whether the district court abused its discretion for failing to impose any sanction, we consider "the nature of the evidence which was not disclosed, the nature of the government's conduct, and the severity of the requested remedy." Glover, 846 F.2d at 342. We affirm the district court's discretion in admitting the evidence for each of the following three independent reasons.
 
 
 26
 First, the district court decided within its discretion given the nature of the evidence and the government's conduct. Like the defendant in United States v. Bartle, 835 F.2d 646 (6th Cir.1987), cert. denied, 485 U.S. 969 (1988), Willis was surprised by the admission of evidence which was not disclosed, presumably in violation of a discovery order. In both cases, the United States Attorney explained this violation by stating that he did not learn of the existence of the evidence until the day before the government sought to admit it. Id. at 650. As in Bartle, there is no evidence that the government engaged in deceitful conduct in keeping the evidence from the defendant. Id. Finally, and once again like Bartle, the evidence at issue is highly probative.[4] Id.
 
 
 27
 Second, we affirm the district court's exercise of discretion because Willis requested only suppression, the most severe alternative to dealing with the surprise evidence. Rule 16(d)(2) offers a variety of remedies designed to allow the admission of probative evidence while giving opposing parties adequate time to prepare for such evidence. In this case, any prejudice caused by the late revelation could have been cured through a recess or continuance. Excluding a critical piece of evidence when a recess or continuance would have adequately protected Willis "is particularly inappropriate where, as here, the government neither willfully nor negligently violated the discovery order." Id. Willis, "by not moving the district court for a recess or continuance, is not in a position to fault the court for" admitting the evidence in question. Id.
 
 
 28
 Third, we affirm the district court's exercise of discretion because, although Willis complains that late disclosure severely prejudiced his ability to mount an effective defense, he does not state how the outcome of the case would have been different if he had learned of the evidence earlier. As the district court stated, "[t]he evidence of guilt is overwhelming."
 
 Conclusion
 
 29
 Willis's assertions of error are groundless. Therefore, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Thomas D. Lambros, Chief United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The precise wording of the district judge's question was as follows: "They're leaving UTC there, right?"
 
 
 [2]
 The government also argues that the district court could not have directed a verdict as alleged by Willis because § 860 is a penalty provision and does not require proof of elements besides those required to demonstrate a violation of § 841(a)(1). We do not reach the merits of this argument since the directed verdict issue is resolved on the separate ground taken up in the following discussion
 
 
 [3]
 Even though the government claims it told Willis about the evidence that Willis used the nickname "Dee" as soon as it became aware of it, the government does not (as it might have) argue that it substantially complied with its Rule 16 obligation to disclose this evidence
 
 
 [4]
 Willis admits that the evidence at issue is "damning" to his mistaken identity defense