28 F.3d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee
v.
Joseph A. PASTO Defendant-Appellant
 No. 93-4156.
 United States Court of Appeals, Sixth Circuit.
 July 8, 1994.
 
 Before: KENNEDY and BATCHELDER, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Joseph A. Pasto appeals his conviction and sentence for three counts of bank robbery in violation of 18 U.S.C. Sec. 2113(a). A jury found Pasto guilty on all three counts and the district court sentenced him to ninety-two months imprisonment, three years supervised release, alcohol treatment and testing, restitution in the amount of $7,859.00 and a special assessment of $150.00. For the reasons set forth below, we affirm.
 
 I.
 
 2
 Defendant Pasto was indicted on June 24, 1993, and charged with four counts of bank robbery. The robberies were alleged to have occurred on April 28, 1993 (Count 1), March 4, 1993 (Count 2), August 11, 1992 (Count 3), and July 8, 1992 (Count 4). After a suppression hearing on July 27, 1993, the district court suppressed evidence obtained at the time of Pasto's arrest[1] and his confession. The district court dismissed Count One of the indictment without prejudice due to a failure to indict within thirty days of arrest, and the government elected not to re-indict. A jury trial commenced on August 9, 1993, on the remaining three counts.
 
 
 3
 At trial the government produced four eye-witnesses to identify Pasto as the bank robber. Laura Wolf, a teller at Third Federal, 10717 Lorain Avenue, Cleveland, Ohio, testified that she was robbed on July 8, 1992, by a short, heavy-set man with beard growth and deep-set eyes, wearing a suit, a blue dress shirt, blue baseball cap and tinted glasses, who gave her a note saying that he had a gun and a bomb. The perpetrator told her to put all her money in an envelope he provided. After obtaining the money from Wolf and starting to leave the bank, the robber came back to Wolf's window, asked her if she had any more money, and asked for the note back. Wolf gave him the note and denied having any additional money, and the robber left. Wolf watched him walk to his car and was able to record the license plate number, which she gave to the police. During the summer of 1993, Wolf identified Pasto's photograph from a spread of six photographs. Wolf also identified Pasto at trial.
 
 
 4
 Laura Spurlock, who was working at the same bank as Wolf on July 8, 1992, testified that immediately after the robbery she had seen the perpetrator in the bank, that she saw a note on Wolf's window and received confirmation from Wolf that she had been robbed. Spurlock was at Wolf's window when the robber came back to demand return of the note. Spurlock described him as an older, short, heavy-set man who was unshaven and wearing a blue jacket, a blue baseball cap and glasses. On July 28, 1993, Spurlock identified Pasto from a spread of six photographs; she also identified him at trial.
 
 
 5
 Donna Noel, a teller at Third Federal, 5800 State Road, Parma, Ohio, testified that she was robbed on August 11, 1992, by a short, heavy-set man wearing a blue polyester jacket, a light blue button up shirt, a baseball cap and sunglasses. Noel stated that the robber handed her a note demanding all of her money and claiming that he had a bomb and a gun. Noel gave the robber the money in a small manila folder which he provided. In June 1993, Noel identified Pasto's photograph from a spread of six photographs. Noel also identified Pasto at trial.[2]
 
 
 6
 Denna Parker, a teller at Society National Bank, 17138 Lorain Avenue, Cleveland, Ohio, testified that she was robbed on March 4, 1993, by a short, stocky, unshaven man with white sideburns whom she described as being in his seventies. The robber, who was wearing a yellow shirt with blue pin stripes, an A-shaped or smoker's hat, a black corduroy coat and sunglasses, gave Parker a note that said he had a gun and a bomb, and demanded all of her money. Parker said that when she began to get some of the money out of her cash drawer the robber said, "All of it, I mean it," and she then got more money out of the drawer and gave it to him. On March 31, 1993, Parker identified Pasto's photograph from a spread of six photographs and also identified him at trial.
 
 
 7
 Prior to making her in-court identification of Pasto, Parker was present in the courtroom during a recess when Pasto was brought in wearing handcuffs. On cross-examination, Parker acknowledged having seen Pasto under those circumstances and testified that she had not initially recognized him due to the fact he had lost weight and had shaved his sideburns.
 
 
 8
 In addition to the eyewitness testimony, the government introduced surveillance photographs from the March 4, 1993, and July 8, 1992, robberies. The parties stipulated that the banks were all insured by the Federal Deposit Insurance Corporation. Pasto did not present any evidence at trial.
 
 
 9
 Pasto was convicted by a jury on all three counts. At the sentencing hearing held on October 14, 1993, the district court computed Pasto's offense level to be 25 and his criminal history category to be IV with a resulting sentencing range of 84-105 months. The district court sentenced Pasto to 92 months imprisonment. This appeal followed.
 
 II.
 A. Defendant's Rule 29 Motion
 
 10
 Defendant Pasto argues on appeal that the district court's overruling of his Rule 29 motion for judgment of acquittal was erroneous in two respects. Pasto contends first that the in-court identification and testimony of Denna Parker, the victim of the March 4, 1993, robbery, violated his due process rights under the Fifth Amendment since Parker, prior to her testimony and in-court identification of him, was present in the courtroom when Pasto was brought in by the United States marshals. Since the sole issue at trial was his identification as the robber, Pasto argues, this error cannot be harmless. Secondly, he argues that the eye-witness testimony presented by the government was equivocal and insufficient to support the guilty verdicts. Pasto argues that this is especially true for the March 4, 1993, robbery since Parker was the only witness to testify regarding that robbery and her testimony should be excluded. Neither of these contentions has merit.
 
 
 11
 The district court properly allowed Parker's testimony and in-court identification of Pasto. Upon learning that Denna Parker had been in the courtroom when the marshals brought Pasto in, the court held a hearing out of the presence of the jury to inquire about this encounter. After questioning Parker himself and permitting counsel for both sides to question her as well, the trial judge found that Parker's seeing the defendant brought into the courtroom was inadvertent and that Parker possessed an independent non-suggestive basis from which to identify the defendant. In addition, defense counsel was permitted to cross-examine Parker about the encounter and to bring out the fact that when Parker first saw Pasto as he was brought into the courtroom, she did not immediately recognize him as the bank robber. All material information relative to this encounter and subsequent identification was presented to the jury and it was within their province to determine the credibility of the eye-witness and weigh any mitigating factors.
 
 
 12
 Pasto's claim that the eye-witness testimony presented by the government was equivocal and insufficient to support the guilty verdicts is wholly unsupported by the record. Four eye-witnesses identified Pasto as the bank robber, both from photographs and at trial. None of that testimony was equivocal. The government also introduced surveillance photographs of the bank robber from the March 4, 1993, and July 8, 1992, robberies, and a photograph showing Pasto's appearance at the time of his arrest.
 
 
 13
 In reviewing a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We find that, when viewed in the light most favorable to the prosecution, the testimony and identification of four eye-witnesses and the bank surveillance photos were sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.[3] The district court's denial of Pasto's Rule 29 motion is affirmed.
 
 B. Reading of Testimony to Jury
 
 14
 Defendant Pasto also argues on appeal that the district court erred in allowing testimony to be read to the jury in response to an inquiry from the deliberating jury. Pasto contends that allowing the court reporter to read portions of the testimony of Donna Noel to the jury was prejudicial because there was a danger the jury would take the testimony out of context and afford it undue weight.
 
 
 15
 In the course of its deliberations, the jury sent the court an inquiry that read: "Donna Noel testified that she identified pictures of the robber in August, 1992. What pictures did she identify and when?" The district court advised counsel, "I'm going to exercise my discretion to have the court reporter read the testimony where it begins to talk about pictures." The court brought the jury into the courtroom and had the court reporter read those parts of Donna Noel's testimony both on direct and cross-examination, which referred to the identification of defendant through photographs.
 
 
 16
 We review for abuse of discretion the district court's decision to read portions of the testimony to the deliberating jury. United States v. Padin, 787 F.2d 1071, 1076 (6th Cir.) cert. denied, 479 U.S. 823 (1986). This Court has stated:
 
 
 17
 "it is within the judge's discretion to re-read testimony for a deliberating jury." In exercising that discretion, the court "can and should take into consideration the reasonableness of the jury's request and the difficulty of complying therewith."
 
 
 18
 Id. (quoting United States v. Licavoli, 725 F.2d 1040, 1049 (6th Cir.) cert. denied, 467 U.S. 1252 (1984).
 
 
 19
 In Padin, this Court noted the dual concerns of affording undue emphasis to the re-read testimony and presenting the testimony out of context. Id. The Padin court found that specific and limited testimony responded to the jury's request and that the district court did not abuse its discretion in complying with the jury's request. Id. at 1077.
 
 
 20
 In this case, the jury requested a specific portion of an individual witness's testimony. The testimony was easily obtained from the court reporter and it was reasonable to present the testimony to the jury since the request was specific, did not require the re-reading of any great amount of testimony, and there was not a great danger of undue emphasis or of taking the testimony out of context. We find that the district court did not abuse its discretion in directing the court reporter to read the requested testimony.
 
 C. Sentence
 
 21
 Defendant Pasto's final argument on appeal is that in calculating his sentence the district court improperly considered the April 28, 1993, robbery, which was the subject of the count dismissed without prejudice by the court and not pursued further by the government. The district court determined that Pasto had a base offense level of 25 for the three robbery convictions, a criminal history category of IV and a resulting sentencing range of 84-105 months. Neither party contested those calculations or the applicable guideline range. The district court sentenced Pasto to 92 months imprisonment, a sentence slightly below the middle of the guideline range.
 
 
 22
 This court lacks jurisdiction to review a sentence imposed within the guideline range absent the defendant's identification of a specific legal error in the formulation of that sentence. United States v. Lovins, 993 F.2d 1244 (6th Cir.1993). Our review of the record and the transcript of the sentencing hearing in this case demonstrates that, although he claims legal error in formulation of the sentence, in fact Pasto merely challenges a legally valid sentence within the appropriate guideline range.
 
 
 23
 At the October 14, 1993, sentencing hearing, the district court noted that the presentence report did not consider the April 28, 1993, robbery. The court did not utilize that robbery in calculating the offense level or depart from the guidelines, but merely commented that "its pretty hard for the court to ignore that particular offense. That's the one that, if anything, in the court's mind, had the best proof, it was simply suppressed." Pasto however claims that the district court improperly used the April 28, 1993 robbery as relevant conduct or to enhance his offense level.[4]
 
 
 24
 We think it is clear from the record that the court did not consider the April 28, 1993, robbery either as relevant conduct or to increase his offense level.[5] Rather, if the court considered that robbery at all, it was only in relation to determining where to sentence Pasto within the applicable guideline range. The district court has discretion in imposing a sentence within the guidelines range and "[n]o limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense" that the district court may consider for the purpose of imposing an appropriate sentence. 18 U.S.C. Sec. 3661. And indeed, where the applicable range is less than 24 months, as is the case here, no explanation is required from the sentencing judge regarding his choice of sentence within that range. Accordingly, we lack jurisdiction to review this sentence.
 
 III.
 
 25
 For the foregoing reasons, the conviction and sentence imposed by the district court is AFFIRMED.
 
 
 
 [1]
 Officers had obtained a dark blue hat, tinted sunglasses, an ink stained demand note, and dye-stained federal reserve notes in violation of the Fourth Amendment. The officers entered and searched Pasto's apartment without a search warrant and without a sufficient basis to make a warrantless arrest or search
 
 
 [2]
 Noel noted that Pasto had lost weight and had shaved off his sideburns by the time of the trial
 
 
 [3]
 We have held that surveillance photographs alone can provide a jury with a sufficient basis to support a conviction. United States v. Bridgefourth, 538 F.2d 1251 (6th Cir.1976)
 
 
 [4]
 Pasto points out that 92 months is the lowest range for offense level 26, which would have been his offense level had he been convicted of four bank robberies
 
 
 [5]
 The court stated, "it's not in here as relevant conduct. I'm not sure what it would have done, if anything, to the computation."