**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Lawrence RODGERS (94–6322); Claude Jackson (95–5105), Defendants– Appellants.**

**Nos. 94–6322, 95–5105.**

United States Court of Appeals, Sixth Circuit.

Submitted March 7, 1996.

Decided April 1, 1997.

---

Christopher E. Cotten, Asst. U.S. Attorney (briefed), Memphis, TN, for U.S.

Robert C. Brooks (briefed), Memphis, TN, for Lawrence Rodgers.

Brett B. Stein (briefed), Memphis, TN, for Claude Jackson.

Before: MARTIN, Chief Judge; BATCHELDER, Circuit Judge; OLIVER, District Judge.*

OLIVER, D.J., delivered the opinion of the court, in which MARTIN, C.J., joined. BATCHELDER, J. (p. 1146), delivered a separate concurring opinion.

OLIVER, District Judge.

Lawrence Rodgers and Claude Jackson were arrested after Rodgers sold a small quantity of crack cocaine to Detective Rowena Adams of the Memphis Police Department. A jury convicted both defendants of aiding and abetting each other in the possession of cocaine base with intent to distribute, and also convicted Jackson of using or carrying a firearm during and in relation to a drug trafficking crime. On appeal, Rodgers and Jackson both challenge their convictions based on sufficiency of the evidence. In addition, Jackson challenges the district court's decision to grant the jury's request to review a transcript of Detective Adams' testimony during deliberations.

---

* The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

Upon review, we find the defendants' verdicts are based on sufficient evidence, and we find the district court did not err in permitting the jury to review Adams' transcribed testimony. We further conclude that the district court's failure to give a cautionary instruction to the deliberating jury regarding its permitted use of the transcript was error, but it was not reversible error. Because there was no reversible error in this case, we AFFIRM both defendants' convictions.

Nonetheless, we take this opportunity to explicitly announce the rule that a district court must give cautionary instructions to the jury when allowing the jury to review trial testimony, and a failure to do so may be reversible error.

## I. Facts

On November 22, 1993, Detective Adams and other officers of the Memphis Police Department conducted an undercover operation in the area of Rayburn and Essex Streets in Memphis, Tennessee. Detective Adams drove her vehicle into this intersection, where Jackson and Rodgers were standing on opposite corners. Adams engaged Rodgers in a conversation about the possibility of purchasing twenty dollars' worth of crack cocaine. Rodgers walked over to Adams' car window to continue the transaction, and at the same time Jackson approached Adams' car and stopped to stand near the front of it.

As Rodgers began to negotiate with Adams, Jackson asked Rodgers if he knew Adams. Rodgers answered "yes." Rodgers' response was not true, as he had never met Detective Adams before. After a moment, Rodgers gave Adams a "rock," which later tested positive for cocaine base, in exchange for twenty dollars from Adams. Jackson and Rodgers then walked away from Adams' car. Officer Robert McIntyre testified he saw Rodgers hand Jackson some money as the two walked away from Adams. Officer J.B. Bell testified he saw Rodgers hand "something" to Jackson, but could not see what it was. Detective Adams, a veteran narcotics undercover officer, testified that it is common for street dealers to work in pairs in the same manner as Jackson and Rodgers apparently did, one holding drugs and the other holding money.

After the buy, Adams gave a "take down" signal to the other officers, indicating they should make an arrest. Jackson and Rodgers separated and ran when they saw the other officers approach. The officers apprehended Rodgers immediately, but Jackson ran between a fence and a house, with Officer Preston Morton in pursuit. When Officer Morton came around the corner of the house, Jackson turned, pointed a pistol at him, and fired three shots. Officer Morton dropped to the ground and returned fire. Jackson ran across a back yard and came upon Mr. George Hall, a home owner who was doing carpentry work on his house. Jackson took Hall hostage and forced him into the house. Hall managed to escape through the back door shortly thereafter. Jackson remained in the house for about an hour before surrendering to the police officers. The police officers discovered Jackson's pistol inside the house, concealed under one of a number of overturned boxes.

A federal grand jury returned a two-count indictment of Rodgers and Jackson. Count One charged both defendants with aiding and abetting one another in the possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Count Two charged Jackson with using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The case went to trial by jury on April 11, 1994, and the jury began its deliberations on April 14, 1994 at 3:18 p.m.

Shortly after beginning its deliberations, the jury sent two notes to the district court. The first note is unimportant to this appeal; the second note asked for a transcript of Detective Adams' testimony. Over the defendants' objections, the court provided the jury with a transcript of all of Adams' testimony.

The next morning, on April 15, 1994, the jury returned its verdict, finding Rodgers guilty on Count One and Jackson guilty on both Counts One and Two. The district court sentenced Rodgers to serve 37 months in prison, and sentenced Jackson to serve 33

months in prison on Count One and 60 months in prison on Count Two, to be served consecutively. Both defendants filed timely appeals.

## II. Jackson's Appeal

### A. Sufficiency of the Evidence.

 First, Jackson challenges the sufficiency of the evidence supporting his convictions on Counts One and Two. When a defendant claims his conviction is based on insufficient evidence, we review the evidence in a light most favorable to the prosecution to determine whether there was enough evidence for a rational trier of fact to find, beyond a reasonable doubt, that the defendant committed all the elements of the offense. *United States v. White*, 932 F.2d 588, 589 (6th Cir.1991).

Jackson claims no rational trier of fact could have found beyond a reasonable doubt that he used or carried a firearm during and in relation to a drug trafficking crime, or aided and abetted Rodgers in the possession of cocaine base with intent to distribute. Specifically, Jackson argues there is no evidence tying him to any drug-related activity. Jackson contends Officer McIntyre's testimony regarding Rodgers' handing money to Jackson is "the crucial fact" that linked him to Rodgers, and thus to any drug possession or trafficking activity. Jackson asserts McIntyre's testimony is "inconsistent" because no other officer mentioned seeing Rodgers give money to Jackson. Jackson concludes that no rational jury could find he possessed or trafficked in illegal drugs, either directly or as an abettor, to commit the crimes with which he was charged.

The evidence connecting Jackson to the illegal drug transaction, however, is far more extensive than Jackson portrays. Detective Adams testified that Jackson came over to her car and spoke to Rodgers in a familiar way, asking Rodgers if he knew Adams. Officers McIntyre *and* Bell testified that Rodgers handed something to Jackson as the two defendants walked together away from Adams' vehicle, with McIntyre adding that this "something" was money. This evidence strongly suggests Rodgers and Jackson were operating together. Furthermore, several officers testified about chasing after Jackson when the defendants separated and ran as the officers first attempted to arrest them. A jury could reasonably conclude that Jackson's immediate attempt to flee from and shoot at the police, and his taking a hostage, was circumstantial evidence proving Jackson knew he had engaged in an illegal drug transaction.

 Moreover, we disagree with Jackson's contention that McIntyre's testimony is "inconsistent;" we find no contradictions or discrepancies in the officers' statements. Officer McIntyre testified he saw Rodgers hand money to Jackson. Officer Bell testified he saw Rodgers hand "something" to Jackson. And the other officers did not observe Rodgers hand anything to Jackson. These statements are not inconsistent, they merely reflect the officers' different apprehensions of the same circumstances from their own vantage points. Further, to the extent this testimony may be viewed as inconsistent, any conflicts in the evidence must be resolved in favor of the United States on appeal. *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir. 1989). Resolution of the testimonial "conflict" in this case, therefore, requires this court to: (1) credit McIntyre's testimony, as his testimony is the most detailed and makes the strongest connection between Jackson and Rodgers; and (2) accept the corroborative elements of the testimony of the other officers. Viewed in this light, there was sufficient direct and circumstantial evidence from which a reasonable jury could conclude Jackson was guilty beyond a reasonable doubt of the offenses with which he was charged. Jackson's appeal based on sufficiency of the evidence is not well-taken.

### B. Giving the Trial Transcript to the Jury During Deliberations.

 Jackson's second assignment of error is that the district court erred in permitting the deliberating jury to review the complete transcript of Adams' testimony. We review the propriety of a court's decision to allow a deliberating jury to review trial testimony under an abuse of discretion standard. *United States v. Padin*, 787 F.2d 1071, 1076

(6th Cir.1986), *cert. denied,* 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 45 (1986).

After the jury retired, it sent a note to the court asking, "Can we have Officer Adams' testimony?" The defendants objected to this request, suggesting the jury should be given the transcript of *all* the officers who testified, so that the jury would not put too much emphasis on Adams' testimony alone. The defendants also argued that if the jury received anything, it should be given the transcript of Adams' entire testimony, not just her testimony on direct examination. The government had no objection to the jury receiving all or part of the transcript.

The district court decided it would permit the jury to have the entire transcript of Adams' testimony, but not the transcript of the testimony of any other witnesses.[1] Neither the defendants nor the government asked the district court to give any additional instruction to the jury regarding the jury's permissible use of this transcript. Further, the record shows the district court did not consider *sua sponte* whether to give any additional jury instruction.

 This court has recognized "two inherent dangers" in allowing a jury to read a transcript of a witness's testimony during its deliberations. *Padin,* 787 F.2d at 1076. First, the jury may accord "undue emphasis" to the testimony; second, the jury may apprehend the testimony "out of context." *Id.* These dangers are "escalated" if the jury makes the request after reporting an inability to arrive at a verdict. *Id.* at 1076–77.

 In addition to these "inherent dangers," there exist more general concerns, including: (1) any transcript provided to a jury should be accurate; (2) transcription of side bar conferences, and any other matters not meant for jury consumption, must be redacted; and (3) as a purely practical matter, a district court "should take into consideration the reasonableness of the jury's request and the difficulty of complying therewith." *See United States*

*v. Hernandez,* 27 F.3d 1403, 1409 n. 5 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1147, 130 L.Ed.2d 1106 (1995) (identifying first two concerns); *United States v. Almonte,* 594 F.2d 261, 265 (1st Cir.1979) (identifying third concern). For example, if the jury's request would require the court to comb the transcript for isolated statements from a number of witnesses, the request can be denied as unreasonable. *Almonte,* 594 F.2d at 265 (denying jury's request because it would have required reading back the testimony of seventeen witnesses).

This case does not raise any of the issues of general concern. First, the parties do not argue that the transcript given to the jury was inaccurate. Second, the transcript of Adams' testimony does not contain any side bar conferences or other privileged matters. *Cf. Henry v. United States,* 204 F.2d 817, 821 (6th Cir.1953) ("the judge's comments [contained in the transcript] could have been the controlling factor in bringing about the agreement of the jury upon a verdict finding the defendants guilty"). Third, the district court had little difficulty in complying with the jury's request—the jury asked for the transcript late in the afternoon on April 14, 1994, and the court produced the transcript the first thing the following morning.

Further, the district court eliminated the second "inherent danger" by providing the jury with a transcript of *all* of Adam's testimony, elicited under both direct and cross-examination. Thus, there is no concern that the jury considered any part of Adams' testimony out of context. *See United States v. Epley,* 52 F.3d 571, 579 (6th Cir.1995) ("the jury heard [via re-reading] the entire testimony of Robert Epley, so the jury [c]ould not have taken part of the testimony out of context"). Clearly, the trial judge did not abuse his discretion in this regard.

This leaves only one concern: whether the jury may have accorded "undue emphasis" to Adams' testimony. It is true that "after the

---

1. The district court reasoned that it must comply with a specific request made by a jury, and cited *United States v. Baldwin,* 621 F.2d 251 (6th Cir. 1980), *cert. denied,* 450 U.S. 1045, 101 S.Ct. 1767, 68 L.Ed.2d 244 (1981). *Baldwin* is inap-

posite, however, because the published opinions in that case do not concern the issue of whether a district court abuses its discretion by providing a deliberating jury with a transcript of testimony.

jury ha[s] reported its inability to arrive at a verdict," there is heightened concern that the jury will place inordinate emphasis on any testimony it then reviews. *Padin,* 787 F.2d at 1076–77. In this case, however, the jury did not make any such report. Moreover, contrary to Jackson's assertion, there is no indication the jury was having great difficulty agreeing on a unanimous verdict. The jury began its deliberations on April 14, 1994 at 3:18 p.m. The court adjourned at 5:45 p.m. and the jury resumed deliberations on April 15, 1994 at 9:30 a.m. The jury announced its verdict at 11:55 a.m. on April 15th. If the length of time a jury deliberates is any indication of the amount of its disagreement over the proper verdict, the timing in this case— less than 5 hours total deliberation for two defendants—suggests the jury was not deeply divided over the question of guilt.

Perhaps more important, we have reviewed the transcript of Adams' testimony that the district court gave to the jury, as well as the transcript of the other police officer witnesses, and we wind up "unimpressed by [Jackson's] ... argument that acceding to the jury's specific and limited request ... placed undue importance on that evidence." *Almonte,* 594 F.2d at 265. The circumstances of this case do not present an "obvious intent to emphasize a specific portion of the transcript," as in *Hernandez,* 27 F.3d at 1405, 1409, where the jury notified the court that its decision hinged on a particular witness's testimony, and even spelled out the specific testimony it thought was critical. Nor are there any other special factors suggesting the jury placed undue emphasis on Adams' testimony, beyond the circumstances inherent in every case where a deliberating jury asks to review testimony. Thus the court did not abuse its discretion in allowing the jury to review Adams' testimony, but not the testimony of the other police officers.

Jackson argues the district court automatically abused its discretion because it did not give the jury a cautionary instruction regarding its permitted use of the transcript, and this failure was not harmless error. Authority does exist in other circuits standing for the proposition that if a district court allows a jury to review trial transcript during its deliberations, the court must give the jury additional, cautionary instructions. For example, the Ninth Circuit holds a district court must take four precautions before allowing a deliberating jury to re-read trial testimony: (1) provide counsel with an opportunity to note inaccuracies in the transcript; (2) caution the jury that the transcript is merely an aid and is not to serve as a substitute for their own memories and assessment of credibility; (3) admonish the jury to weigh all the evidence and not to focus on any portion of the trial; and (4) instruct the jury that the transcript is not authoritative and should not prevail over the jurors' memories. *United States v. Lujan,* 936 F.2d 406, 411–12 (9th Cir.1991). The Ninth Circuit has relied on *Lujan* to reverse a conviction after the district court "failed to admonish the jury to weigh all the evidence and to instruct that the transcript was not authoritative." *Hernandez,* 27 F.3d at 1409.[2]

Previously, this court has not *explicitly* held that when a trial court permits a deliberating jury to review trial testimony, the trial court must give the jury a cautionary instruction. Nonetheless, in numerous cases where the Sixth Circuit determined a district court did not abuse its discretion when it gave a transcript to, or re-read testimony to, a deliberating jury, this court noted the district court had taken affirmative steps to ameliorate the dangers we identified in *Padin.*[3] Whenever a district court grants a

---

**2.** *But see United States v. Sheets,* 101 F.3d 706, 1996 WL 665129 at *2 (9th Cir. Oct.7, 1996) (TABLE, text in Westlaw) (Ninth Circuit upheld conviction even though district court allowed the deliberating jury to review trial testimony absent any cautionary instruction).

**3.** *See United States v. Tines,* 70 F.3d 891, 897 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1280, 134 L.Ed.2d 225 (1996) (district court twice gave a "cautionary instruction explaining

how the jury was to regard the re-read testimony"); *United States v. Epley,* 52 F.3d 571, 578–79 (6th Cir.1995) (district court cautioned the jury to "consider the testimony as a whole" and not to emphasize re-read testimony over other evidence); *United States v. Zukinta,* 39 F.3d 1183, 1994 WL 599463 at *6 (6th Cir. Nov.1, 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1325, 131 L.Ed.2d 205 (1995) (TABLE, text in Westlaw) (district court "gave appropriate cautionary in-

jury's request to review some of the testimonial evidence presented at trial, there exists a real danger that the jury will emphasize this evidence over the other evidence. Therefore, we hold that if a district court chooses to give a deliberating jury transcribed testimony, or chooses to re-read testimony to a deliberating jury, the district court must give an instruction cautioning the jury on the proper use of that testimony. This holding makes explicit a rule we have consistently applied in the past.

■ The rule we announce today will not place a great burden on the district courts and can serve as an antidote to the natural tendency of a deliberating jury to focus on the testimony it has requested. Of course, a cautionary instruction does not necessarily immunize a district court from error. It is possible in a particular case that the choices made by a judge regarding whose testimony and/or what portions of testimony should be re-read may constitute an abuse of discretion, even in the face of such an instruction. But an instruction of the sort announced herein represents the minimum amount of protection a district court should provide if it grants a deliberating jury's request for testimony.

■ Having announced this rule, we next address whether the district court's failure to give a cautionary instruction in the circumstances of this case constitutes reversible error. In making this determination, we do not review for harmless error, as Jackson suggests. When defense counsel fails to contemporaneously assert fault regarding jury instructions at the time of trial, "we review only for plain error." *United States v. Thomas*, 11 F.3d 620, 629 (6th Cir.1993), *cert. denied*, 511 U.S. 1043, 114 S.Ct. 1570, 128

L.Ed.2d 214 (1994); *United States v. Luciano-Mosquera*, 63 F.3d 1142, 1156–57 (1st Cir.1995) (defendants who did not contemporaneously object when district court read back trial testimony to deliberating jury without giving cautionary instruction must show plain error). Though defendants did object unsuccessfully to providing the jury with only Adams' testimony, they did not voice any other objection.

■ In order to constitute "plain error," the defendant must show there was an error that is clear and obvious under current law, and this error prejudicially affected the outcome of the trial. *Thomas*, 11 F.3d at 630 (citing *United States v. Olano*, 507 U.S. 725, 734–35, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993)). Even then, a court of appeals should exercise its discretion to reverse only when the result is a miscarriage of justice. *Id.* We conclude that no reversible error occurred. First, we remain unconvinced under the circumstances in this case that the district court's failure to provide the jury with a cautionary instruction prejudicially affected the outcome of the trial, or resulted in a miscarriage of justice. Second, in exercising our discretionary power under Fed. R.Crim.P. 52(b), we conclude that any error by the district court did not "seriously affect the fairness, integrity or public opinion of [the] judicial proceedings." *Id.* (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). Accordingly, we find the district court's failure to instruct the jury regarding its permitted use of the transcript during deliberations was not plain error. Therefore, Jackson's conviction is AFFIRMED.

### III. Rodgers' Appeal

Rodgers' only claim on appeal is that the evidence was insufficient to convict him. For

structions to the jury about the importance of considering the evidence in its entirety"); *United States v. Willis*, 986 F.2d 1423, 1993 WL 30488 at *1 (6th Cir. Feb.9, 1993) (TABLE, text in Westlaw) (district court cured any possible error by "admonishing the jury to consider all the evidence"); *United States v. Shoffner*, 929 F.2d 702, 1991 WL 43922 at *2 (6th Cir. April 1, 1991) (TABLE, text in Westlaw) (district court "instructed the jurors that all the evidence was to be considered and that no undue credence was to be given" to the re-read testimony); *United States v. Betancourt*, 838 F.2d 168, 175 (6th Cir.

1988), *cert. denied*, 486 U.S. 1013, 108 S.Ct. 1748, 100 L.Ed.2d 210 (1988) (the trial judge "carefully informed the jury, in standard terms, that all of the evidence was to be weighed, and no undue credence was to be given to any single part of it"). *But see United States v. Pasto*, 28 F.3d 1214, 1994 WL 329557 at *3–4 (6th Cir. July 8, 1994), *cert. denied*, — U.S. —, 115 S.Ct. 523, 130 L.Ed.2d 427 (TABLE, text in Westlaw) (holding the district court did not abuse its discretion when it allowed the deliberating jury to review testimony, without addressing lack of any cautionary instruction).

the reasons set forth in our discussion of Jackson's insufficiency of the evidence claim, this claim is not meritorious.

Therefore, Rodgers' conviction is also AFFIRMED.

BATCHELDER, Circuit Judge, concurring.

I concur in much of the reasoning and in the result reached in this opinion. I write separately simply to say that, as the majority opinion explicitly points out, the circumstances of this case raise none of the concerns connected with permitting a deliberating jury to review the transcript of trial testimony. That being the case, I think it does not behoove us to use this case to lay down the rule that the majority opinion announces.