[Cite as *State v. Aidara*, 2019-Ohio-978.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee, | : | No. 106971 |
| v. | : | |
| IDRISSA AIDARA | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** March 21, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-16-603057-A

### *Appearances:*

Russell S. Bensing, *for appellant.*

Michael C. O'Malley, Prosecuting Attorney, and Jonathan
Block, Assistant Prosecuting Attorney, *for appellee.*

LARRY A. JONES, SR., J.:

**{¶1}** Defendant-appellant Idrissa Aidara ("Aidara") appeals his abduction conviction that was rendered after a jury trial, during which the trial court judge communicated ex parte with the jury during its deliberations. For the reasons that follow, we reverse and remand for a new trial.

# I. Procedural and Factual History

{¶2} In 2016, Aidara was indicted in an 18-count indictment; the date of the alleged offenses ranged from March 2013 through September 2015. The indictment charged that Aidara committed nine counts of domestic violence against his then girlfriend and mother of his children, Fatima Kamara ("Kamara"); one count each of abduction and kidnapping against Kamara; two counts of endangering children and one count of domestic violence against the couple's child, A.A.; three counts of endangering children and one count of domestic violence against the couple's child, H.A.

{¶3} The case proceeded to a jury trial in 2017. Two counts were dismissed prior to the jury's deliberations (Counts 4 and 7, domestic violence, victim Kamara). Two incidents giving rise to this appeal occurred during the jury's deliberations; they will be discussed in more detail below. As a result of one of the incidents, i.e., the trial judge communicating ex parte with the jury, the defense moved for a mistrial, which was denied.

{¶4} After its deliberations, the jury found Aidara guilty of abduction (Count 3, victim Kamara); not guilty of four of the domestic violence charges (Count 8, victim A.A.; Count 13, victim H.A.; and Counts 15 and 16, victim Kamara); not guilty of all five of the endangering children counts (Counts 12, 14, and 18, victim H.A.; Counts 9 and 17, victim A.A.). The jury was hung on the remaining counts (Counts 1, 2, 5, 6, and 11, domestic violence, victim Kamara; and Count 10,

kidnapping, victim Kamara). The trial court sentenced Aidara to three years of community control sanctions with conditions.

{¶5} Aidara appealed, but this court dismissed the appeal for lack of a final, appealable order. *State v. Aidara*, 8th Dist. Cuyahoga No. 105528 (Mar. 9, 2017), motion No. 505130.

{¶6} The administrative judge of the common pleas court reassigned the matter to a different judge, and thereafter the case proceeded to a bench trial on the hung counts. Those remaining counts were disposed of either by way of the trial court granting the defense's Crim.R. 29 motion for judgment of acquittal, or a finding by the court of not guilty. Thus, the only charge that Aidara was convicted on was abduction.

{¶7} The following facts were established at the first trial, which is the subject of this appeal.

{¶8} Kamara testified about her relationship with Aidara. Kamara met Aidara on a dating website. At that time, she was living in Virginia with her mother and Aidara was living in Cleveland.

{¶9} In December 2012, Kamara became pregnant with A.A. In March 2013, Aidara went to Virginia to get Kamara to come live in Cleveland. Kamara testified that on the drive from Virginia to Cleveland, Aidara was verbally abusive to her. Once in Cleveland, he physically beat her. Kamara testified that her life with Aidara was filled with physical abuse.

{¶10} A.A. was born in September 2013, and their second child, H.A., was born in June 2014.

{¶11} Kamara made several statements about the alleged abuse: she made statements to the police in January 2014, October 2015, and averred about the abuse in two affidavits, one in October 2015 and the other in December 2015. However, many of the incidents of abuse that she testified to at trial were not mentioned in the statements. For example, she never mentioned the first instances of abuse that she claimed she suffered when she first arrived in Cleveland.

{¶12} Detective Justin Ludwig ("Detective Ludwig"), who responded to the call Kamara made to the police in January 2014, testified. Kamara told Detective Ludwig that Aidara had dragged her from the garage into the house and hit her "all over" her body. The detective testified, however, that Kamara did not show him any injuries she had sustained, and he did not observe anything that would have indicated that a struggle had taken place.

{¶13} Other facets of Kamara's testimony were also uncorroborated. For example, Kamara testified that she recorded Aidara yelling at A.A., but she was unable to find the recording. She further claimed that she had called 911 numerous times, but no record of the calls could be found.

{¶14} In regard to the children, Kamara testified that she "suspected" Aidara had engaged in some type of inappropriate sexual contact or conduct with them. She also testified about alleged emotional abuse Aidara subjected the children to.

{¶15} In an attempt to discredit Kamara's testimony, the defense called three medical professionals who were invovled in Kamara and/or the children's care. First, a maternity nurse who visited the couple's home approximately five times after H.A. was born testified; each visit lasted approximately 45 minutes. According to the nurse, "[e]verything seemed normal" in the household. She would examine the baby, H.A., and never noticed any markings or bruising on the baby. Although she did not examine Kamara, she also did not observe any outward signs of abuse on her.

{¶16} Second, the children's pediatrician testified. According to the pediatrician, she never had any concerns that the children were being abused. However, in September 2015, Kamara told her that she found some of Aidara's behavior "suspicious" and it led Kamara to think that Aidara was being sexually inappropriate with A.A. For example, Kamara told the pediatrician that she would sometimes run errands in the morning after she got A.A. dressed, and when she would return A.A. would be in different clothing. When Kamara would ask Aidara why A.A. had different clothes on he would tell her that he made her shower again. Kamara also told the pediatrician that Aidara physically abused her, A.A., and H.A. The pediatrician performed an examination of A.A. and H.A., but did not observe anything concerning.

{¶17} The third medical professional to testify was Kamara's OB/GYN who cared for Kamara during both pregnancies. She testified that she never observed

any signs of physical injury Kamara may have suffered, and Kamara never told her that she was being abused.

## II. Jury Deliberations

{¶18} The jury began its deliberations late in the day (3:40 p.m.). The following day, the jury returned at 9:30 a.m. for its first full day of deliberations. While the jury was deliberating, the trial judge held an on-the-record conference with the parties and attorneys, wherein he informed them that earlier in the morning, the jury, through its foreperson, submitted the following written question: "Are we able to obtain the transcript from the court reporter?" The judge told the parties the following: "Without consulting the attorneys, the Court answered 'no.'" The court reasoned that the answer was "no" because the "transcript was not prepared and didn't exist."

{¶19} The trial judge then told the parties that the court had also received a second question. The judge asked the parties to "bear with [him] for a moment" while he tried to locate the question. The bailiff told the judge, "[y]ou actually have it in your hand, Judge, because you looked at it and said tell them to write another one." The judge located the question and read it to the parties: "Are there dates/times associated with State['s] Exhibit[s] 4, 5, 6, and 7 and 8?"[1] Further, the judge informed the parties that it had just received a third question, "hot off the presses": "Are we able to obtain the date/time associated with State's Exhibit 9?"

_____

[1]Those exhibits were photographs Kamara took of herself to show her alleged injuries.

**{¶20}** The trial judge further told the parties that after answering "no" to the jury's first question, he learned from the court reporter that a portion of the testimony in the case — the complete testimony of Kamara — had been transcribed at the behest of the defense. The judge told the parties that, because Kamara was the sole witness about the exhibits the jury had questions about, he was considering providing her complete testimony to the jury. The state agreed that the Kamara's testimony should be provided to the jury.

**{¶21}** The defense, however, objected and argued that turning over only the transcript of Kamara's testimony — when the jury had asked for "the transcript" (presumably of the whole trial) would give "special emphasis and influence" to Kamara's testimony. Counsel stated that it was his belief that giving the jury the transcript of Kamara's testimony so that the jury could attempt to reconcile the dates was improper. The court responded as follows:

> Let me clarify so we can be totally transparent. We had a hearing in chambers approximately 35, 45 minutes ago where I updated the attorneys on the issues that the Court was presented with.
>
> You know, as we've printed up the transcript to possibly provide it to the jury * * * I asked and informed, actually the defense counsel along with the prosecution that I would speak to the jury about the status of their deliberations.
>
> And I did inquire of the foreperson, went to the jury room, to make a complete record here, inquired of the foreperson if they needed clarity on this issue, if a portion of the transcript that dealt with this would be useful to them and they said, yes, [it] would.
>
> * * *

* * * The attorneys were informed so I am aware of what it is they are looking for.

Defense counsel responded,

As for speaking with the jury, * * * you had indicated that * * * you were going to talk to the jury.

It was my understanding that was going to be in open court because that's the only time that we would speak to a jury.

{¶22} The assistant prosecuting attorney told the court that it was also the state's "assumption that the Court's questioning [of] the jury would occur on the record in the courtroom." The court told counsel that they "possibly misunderstood," and that the trial court had no intention of "bring[ing] the jury into the courtroom and inquir[ing] of them on this issue with everyone present." Defense counsel requested that the "entire conversation and with whom be cited here on the record so that the Court of Appeals can know what transpired back in the jury [room]." Further, "regardless of what was stated," the defense moved for a mistrial.

{¶23} The trial judge summarized his "less than two minutes" conversation with jury as follows: brief small talk, followed by the judge telling the jury in response to the first two questions they asked that,

I originally told you, no, you couldn't have a copy of the transcripts because there is not a complete copy of the transcript available. So, but then I got your second question and learned that a partial transcript had been prepared that may deal with these exhibits, and that was [Kamara's] testimony. I informed them that that had been transcribed and inquired of them if this would be helpful.

**{¶24}** The jurors indicated that the partial transcript would be helpful and the judge indicated that he would get it for them. The defense continued its objection, emphasizing that when the court "offered what was available, of course they're going to take that. Why wouldn't they take it? Of course it's going to be helpful * * * it's very helpful when you give one portion of it, the accuser without the context of cross-examination of others to put in context. And so this is complete assistance to the State of Ohio, and we object." The trial court overruled the defense's objection, overruled the motion for a mistrial, and gave the jury the transcript of Kamara's testimony.

**{¶25}** The jury was provided with the transcript sometime between 1:45 p.m. and 1:55 p.m. At approximately 3:50 p.m., the jury indicated that they were hung on several of the counts, and the trial court gave them the *Howard* charge.[2] After a period of deliberation, the jury found Aidara guilty of one count, abduction, not guilty of several other counts, and was hung on the remaining counts.

### III. Assignments of Error

I. The trial court erred in denying Defendant's Motion for Mistrial based upon the trial court's ex parte communications with the jury.

II. The trial court erred in providing the transcript of the State's only key witness to the jury.

### IV. Law and Analysis

---

[2]The *Howard* charge, issued under the authority of *State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989), is an instruction "intended for a jury that believes it is deadlocked, so as to challenge them to try one last time to reach a consensus." *State v. Robb*, 88 Ohio St.3d 59, 81, 723 N.E.2d 1019 (2000).

{¶26} In his first assignment of error, Aidara contends that the trial court erred in denying his motion for a mistrial, which was based on the trial judge's ex parte communication with the jury.

{¶27} Under the Fourteenth Amendment, a criminal defendant is guaranteed the due process right to be present at every critical stage of his or her trial. *State v. Campbell*, 90 Ohio St.3d 320, 346, 738 N.E.2d 1178 (2000), citing *Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934). This right is codified in Crim.R. 43(A), which provides in relevant part that the "defendant must be physically present at every stage of the criminal proceeding and trial * * *." A defendant therefore "has the right to be present when the court communicates with the jury." *State v. Mitchell*, 7th Dist. Columbiana No. 05 CO 63, 2008-Ohio-1525, ¶ 63, citing *State v. Abrams*, 39 Ohio St.2d 53, 55-56, 313 N.E.2d 823 (1974).

{¶28} "As a general rule, any communication with the jury outside the presence of the defendant or parties to a case by either the judge or court personnel is error which may warrant the ordering of a new trial." (Citations omitted.) *State v. Schiebel*, 55 Ohio St.3d 71, 84, 564 N.E.2d 54 (1990). "'Such communications are required to be made in the presence of the defendant or parties so that they may have an opportunity to be heard or to object before the judge's reply is made to the jury.'" *State v. Rucker*, 2d Dist. Montgomery No. 24340, 2012-Ohio-4860, ¶ 42, quoting *Bostic v. Connor*, 37 Ohio St.3d 144, 149, 524 N.E.2d 881 (1988).

{¶29} "[E]rroneous communications between the judge and jury constitute good cause for a new trial only if the communications prejudiced the defendant's

right to a fair trial." (Citations omitted.) *State v. Manns*, 169 Ohio App.3d 687, 2006-Ohio-5802, 864 N.E.2d 657 (2d Dist.). There is not a conclusive presumption of prejudice. *Schiebel* at *id.* "To establish prejudice from such ex parte communications, 'the complaining party must first produce some evidence that a private contact, without full knowledge of the parties, occurred between the judge and jurors which involved substantive matters.'" *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 84, quoting *State v. Jenkins*, 15 Ohio St.3d 164, 473 N.E.2d 264 (1984), paragraph thirteen of the syllabus. "The complaining party must also show actual prejudice." (Citations omitted.) *Bryan* at *id.* Therefore, the "communication must have been of a substantive nature and in some way prejudicial to the party complaining." *Schiebel* at *id.*

{¶30} "A statement of the trial court or its official is not substantive if it does not address any legal issues, any fact in controversy, any law applicable to the case, or some similar matter." (Citations omitted.) *State v. DiPietro*, 10th Dist. Franklin No. 09AP-202, 2009-Ohio-5854, ¶ 17. "[I]f the communication is not 'substantive,' the error is harmless." (Citations omitted.) *State v. Allen*, 73 Ohio St.3d 626, 630, 653 N.E.2d 675 (1995). "[E]ven where the communication involves a substantive issue, the defendant still must demonstrate that he was prejudiced by the communication." (Citation omitted.) *State v. Cook*, 10th Dist. Franklin No. 05AP-515, 2006-Ohio-3443, ¶ 36.

{¶31} Here, the trial judge went into the jury room during the jury's deliberations, unbeknownst to the parties, and without a court reporter, and spoke

to the jury about whether they needed "clarity" regarding the dates of exhibits relative to the charges. We believe that the unrecorded ex parte communication was substantive and prejudicial to Aidara. In so finding, we cannot ignore that this was not a case where the state presented overwhelming evidence against Aidara. And after the trial court dismissed two of the charges, 16 remained, and the jury convicted him on only one charge, which pertained to the exhibits the court offered more "clarity" on. Further, the retrial on the hung counts did not produce any more convictions. The state of the case punctuates the irregularity of the trial judge communicating ex parte with the jury even more.

{¶32} In light of the above, the first assignment of error is sustained.

{¶33} Although the first assignment of error is dispositive of this appeal, we nonetheless briefly consider the second assignment of error, in which Aidara contends that the trial judge erred by providing the jury with the transcript of Kamara's testimony.

{¶34} A trial court's decision to allow a jury to rehear all or part of a witness's testimony is within its discretion. *See State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 123; *State v. Berry*, 25 Ohio St.2d 255, 267 N.E.2d 775 (1971), paragraph four of the syllabus.

{¶35} However, there are "two inherent dangers" in allowing a jury to rehear testimony during deliberations. *State v. Cox*, 12th Dist. Butler No. CA2005-12-513, 2006-Ohio-6075, ¶ 14, citing *United States v. Rodgers*, 109 F.3d 1138 (6th Cir.1997). First, the jury may place "'undue emphasis'" on the testimony; second,

the jury may take the testimony "'out of context.'" *Cox* at *id.,* quoting *Rodgers* at 1143; *see also United States v. Padin*, 787 F.2d 1071 (6th Cir.1986). Further, the Sixth Circuit explained that there is a heightened concern that the jury will place inordinate emphasis on testimony it reviews after it has reported its inability to arrive at a verdict. *Rodgers* at 1144.

{¶36} Upon review, we find that allowing the jury to have the transcript of Kamara's testimony concerning. Kamara was the state's key witness and her testimony represented the overwhelming majority of the trial testimony; thus, we believe allowing the jury to have the transcript put undue emphasis on her testimony in what was not a "strong" case for the state.

{¶37} Further, because the trial court changed its original position that it would not provide the transcript only upon learning that the testimony had been transcribed, it does not appear that it exercised a careful balancing of the factors to be considered in deciding whether to permit a jury to have transcripts.

{¶38} On this record, the trial court abused its discretion by giving the jury the transcript of Kamara's testimony. The second assignment of error is sustained.

{¶39} Judgment reversed; case remanded for retrial on the sole abduction count.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR