[Cite as *In re J.J.M.*, 2012-Ohio-5605.]

STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO.   12 HA 2 |
| | ) | |
| J.J.M., | ) | O P I N I O N |
| | ) | |
| A DELINQUENT CHILD. | ) | |

CHARACTER OF PROCEEDINGS:    Criminal Appeal from Common Pleas Court, Juvenile Division, Case No. 20122011.

JUDGMENT:    Affirmed.

APPEARANCES:
For Appellee:    Attorney T. Shawn Hervey
Prosecuting Attorney
Attorney Michael Washington
Assistant Prosecuting Attorney
111 West Warren Street
P.O. Box 248
Cadiz, Ohio  43907

For Appellant:    J.J.M., *Pro se*

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated:  December 3, 2012

VUKOVICH, J.

{¶1} Appellant J.J.M. appeals a decision from the Harrison County Common Pleas Court, Juvenile Division that adjudicated him a delinquent child for committing the offense of underage consumption in violation of R.C. 4301.69. Appellant raises four arguments. First, he contends that the trial court's decision is against the manifest weight of the evidence. Second, he argues that the trial court should have suppressed the results of the Portable Breath Test (PBT). Third, he asserts that there was insufficient evidence to convict him. Lastly, he argues that the trial court erred when it overruled his second motion to dismiss without holding a hearing. For the reasons expressed below, none of these arguments are meritorious. Thus, appellant's delinquency adjudication and disposition are hereby affirmed.

<u>Statement of the Facts and Case</u>

{¶2} On the night of February 19, 2012, the Cadiz Police received a noise complaint concerning a possible house party at 317 West Warren Street in the Village of Cadiz, Harrison County, Ohio. Tr. 11, 30. Officers Michael Sable and Rodney Taggart responded to the call and upon arriving at the address they heard loud music and a lot of people talking. Tr. 12. They gained access to the residence and observed open containers of alcohol and found underage people hiding in the house. Appellant, 16 at the time, was one of the underage people hiding in the attic. Tr. 13.

{¶3} The officers called the Ohio State Highway Patrol to bring a portable breath test (PBT) to the address. Tr. 14, 30, 49. Trooper T.J. White responded to the call and administered the PBT to a number of individuals, including appellant. Tr. 30, 34, 38, 50. Both Officers testified that appellant failed the PBT by blowing a .02. Tr. 18, 34.

{¶4} As a result of that, appellant was issued a citation. Additionally, a complaint was filed in the Juvenile Division alleging that appellant is a delinquent child for committing the offense of underage consumption in violation of R.C. 4301.69.

{¶5} Appellant, acting *pro se*, filed a motion to suppress and motion to dismiss. He argued that the results of the PBT must be suppressed because the Trooper had no authority to administer the test. Specifically, his argument was that an Ohio State Trooper has no jurisdiction to assist local law enforcement by administering a PBT. Appellant also argued that his Fourth Amendment Rights were violated by an illegal search and seizure. He claimed that the officers did not have permission to enter the house on Warren Street and thus, it was an illegal search and seizure.

{¶6} A hearing was held on the matter. At the hearing, appellant acknowledged that his Fourth Amendment Rights were not violated because he was not the owner of the house. Thus, he dismissed the illegal search and seizure argument. The only issue left for the court to decide was the legal issue of whether the State Trooper had the authority to administer the PBT. The court instructed both the state and appellant to file briefs on that issue.

{¶7} Both the state and appellant timely filed their briefs. However, in appellant's brief, he attempted to add a second argument concerning why his Fourth Amendment Rights were violated. He claimed that he was not permitted to leave the residence until the PBT was administered on him. He asserted that there was no probable cause for the detention and thus, his rights were violated.

{¶8} Following review of the briefs, the trial court held that State Troopers have authority to assist local law enforcement when requested to do so. Thus, it concluded that appellant's argument did not provide a basis to suppress the PBT test. The trial court additionally overruled the supplemental Fourth Amendment argument. It concluded that appellant had every opportunity to argue this allegation in his first motion, but he did not. Furthermore, it noted that appellant had dismissed Fourth Amendment violation arguments at the hearing.

{¶9} The matter then proceeded to an adjudication hearing. In addition to the officers testifying that appellant blew a .02 on the PBT, one of the individuals at the party that was also charged with and admitted to underage consumption, S.C.,

testified that she witnessed him playing beer pong, drinking beer and taking at least one sip of Southern Comfort. Tr. 66-67.

{¶10} On appellant's behalf, two of his friends testified that they did not witness him drinking that evening and that instead of playing beer pong, they were playing water pong and were not drinking. Tr. 80, 83, 85, 91. Appellant's mother testified that she witnessed the administration of the PBT and that appellant blew a 0.00. Tr. 102-103. Appellant also testified that he did not consume any alcohol that evening. Tr. 116.

{¶11} After taking the matter under advisement, the trial court found that the state proved the elements of underage consumption and adjudicated appellant a delinquent. The dispositional hearing was held a couple weeks later. The court ordered appellant to be detained for 90 days at Sargus Juvenile Detention Center, but suspended that detention period. Appellant was additionally ordered to pay court costs, was placed on probation for three months, ordered to perform 40 hours of community service, and ordered to undergo a Drug and Alcohol Evaluation. 06/22/12 J.E.

{¶12} Appellant, *pro se*, filed a timely appeal and brief.

<u>First Assignment of Error</u>

{¶13} "In his Judgment Entry dated June 6, 2012, the judge lied repeatedly, failed to abide by multiple laws, including a law that was stipulated to by the assistant prosecutor, fraudulently attributed testimony to an Ohio Trooper, discredited a credible witness based upon untruthful accusations and wrongfully omitted almost every bit of testimony that supported appellant's case. Since the final judgment was based upon the judge's wrongful actions, the judge erred when he found the appellant to be a delinquent child."

{¶14} As the assignment of error indicates, appellant contends that the trial court acted improperly in adjudicating him a delinquent. The only law that appellant cites this court to in this assignment of error is the Ohio Supreme Court's decision in *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177.

{¶15} *In re C.S.* is the Ohio Supreme Court's decision on a juvenile's ability to waive the right to counsel. Appellant contends that the Ohio Supreme Court's decision in *In re C.S.* stands for the proposition that his mother could help and advise him during the delinquency proceedings while he was acting *pro se*. He asserts that the trial court violated the case law when it admonished his mother for advising him.

{¶16} It is true that during the proceedings, the trial court did explain to both appellant and his mother that she could not represent him. In fact, when she was passing appellant notes during the adjudication hearing, the following colloquy occurred:

> THE COURT: [Appellant's mother], you are here as a parent.
>
> [Appellant's Mother]: Okay.
>
> THE COURT: I see you taking notes and handing them to you – your son. That is again verging very close to practicing law without a license. You're not permitted to be doing that. You're not permitted to be prompting him.
>
> [Appellant's Mother]: I'm sorry.
>
> THE COURT: You're not permitted to be doing those things. I just don't want to get you crossing the line into something that you're just –
>
> [Appellant's Mother]: I'm sorry.
>
> THE COURT: I'm just trying to keep you safe on that point. Okay. Thank you.

Tr. 18.

{¶17} The trial court did not err in making this advisement and admonishing appellant's mother from being careful that she did not engage in the unauthorized

practice of law. In discussing whether a parent can represent a minor child, the Court made the following statements:

> In enacting this statute [R.C. 2151.352], we presume, the General Assembly was mindful of the common law. Cf. *Meyer v. Holley* (2003), 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753. Because the common law does not permit parents to appear pro se on behalf of their minor children in civil cases, see, e.g., *Shepherd v. Wellman* (C.A.6, 2002), 313 F.3d 963, 970–971, a fortiori, the common law would not permit parents to act pro se on behalf of their children in a delinquency case.
>
> Moreover, at the time it enacted R.C. 2151.352, the Ohio legislature was well aware that this court has the exclusive authority to regulate, control, and define the practice of law, including prohibitions on lay representation, see *In re Unauthorized Practice of Law in Cuyahoga Cty.* (1963), 175 Ohio St. 149, 151, 23 O.O.2d 445, 192 N.E.2d 54, that we had held that "no one, other than an attorney, may appear in court as a representative of another, whether or not such representative is to receive a fee for his services," id., and that we had defined the practice of law as including representation before a court, as well as other tasks, including "all advice to clients and all actions taken for them in matters connected with the law," *Land Title Abstract & Trust Co. v. Dworken* (1934), 129 Ohio St. 23, 1 O.O. 313, 193 N.E. 650, at paragraph one of the syllabus. We did not then, and we do not now, countenance a parent who is not an attorney representing a child in court in the capacity of counsel.
>
> Indeed, "[i]t has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson* (1970), 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763, fn. 4. Most parents are not attorneys and will not be able to provide effective

counsel because they are not trained in the law.  See *Gault,* supra; *Johnson v. Zerbst* (1938), 304 U.S. 458, 462–463, 58 S.Ct. 1019, 82 L.Ed. 1461; *Powell v. Alabama* (1932), 287 U.S. 45, 68–69, 53 S.Ct. 55, 77 L.Ed. 158; *In re Manuel R.* (1988), 207 Conn. 725, 739, 543 A.2d 719.  Because even the best-intentioned parents will lack the skill and familiarity with law and procedure to adequately represent their children in delinquency proceedings, they may not do so.

*In re C.S.* at ¶ 91-93.

**{¶18}** Consequently, a parent that is not a licensed attorney is not permitted to act as counsel for his/her child in this context.  When a parent is feeding a *pro se* juvenile the questions to ask and the arguments to make, the juvenile is merely a puppet and the parent is actually engaging in the practice of law.

**{¶19}** That said, we do acknowledge that the Ohio Supreme Court does discuss that a parent can advise or counsel their child.  It is this portion of the decision that appellant seems to be relying on.  However, when that discussion is read in context, the Ohio Supreme Court is solely discussing that when a juvenile is waiving counsel the parent is allowed to advise or counsel the child as to whether waiver is the appropriate course of action:

We believe that the fifth sentence of the statute reflects the General Assembly's understanding that *Gault* held that the juvenile may waive his rights, including his right to counsel, see *Gault,* 387 U.S. at 41–42, 87 S.Ct. 1428, 18 L.Ed.2d 527, and that it codifies that right of waiver but only if the juvenile is advised by a parent in considering waiver.

We hold that the word "represent" in the fifth sentence of R.C. 2151.352 means to counsel or advise the juvenile in a delinquency proceeding.  We further hold that in a delinquency proceeding, a juvenile may waive his constitutional right to counsel, subject to certain standards articulated below, if he is counseled and advised by his

> parent, custodian, or guardian. If the juvenile is not counseled by his parent, guardian, or custodian and has not consulted with an attorney, he may not waive his right to counsel.

*In re C.S.* at ¶ 95, 98.

**{¶20}** Here, the right to counsel was already waived. Thus, the advisements and counsel that appellant's mother was making did not go to the choice of whether counsel should be waived. The record implies that the mother's involvement was hinging on the unauthorized practice of law because she was telling the *pro se* juvenile the questions to ask and the arguments to make. Therefore, we hold that the trial court did not err when it informed appellant's mother that she would not be permitted to engage in the unauthorized practice of law in its courtroom.

**{¶21}** As aforementioned, *In re C.S.* is the only law cited in this assignment of error. App.R. 16(A)(7) states that the arguments must contain citations to authorities and statutes that support the argument. As stated above, *In re C.S.* does not support reversal of the adjudication decision. Thus, this court could hold that under this assignment of error appellant has not presented this court with any other legal basis for reversing the court's decision.

**{¶22}** That said, the state asserts that appellant is claiming that reversal can occur because the trial judge violated the Ohio Code of Judicial Conduct. In appellant's reply brief, he appears to admit that is his argument.

**{¶23}** As the state correctly points out, a violation of the Judicial Code does not permit this court to reverse the trial court's adjudication determination. Appellate Courts have consistently recognized that any allegation that the trial judge violated the Code of Judicial Conduct, acted in a manner demeaning to the judiciary, and engaged in unethical misconduct are not properly brought before the court of appeals. *Wilburn v. Wilburn,* 9th Dist. No. 05CA008798, 2006–Ohio–5820; *Szerlip v. Szerlip*, 5th Dist. No. 01CA16, 2002 WL 1270849 (May 20, 2002). "Any allegations of judicial misconduct are not cognizable on appeal, but is a matter properly within the jurisdiction of the Disciplinary Counsel." *Wilburn* at ¶ 10, quoting *Szerlip v. Spencer* (Mar. 14, 2002), 5th Dist. No. 01 CA30 (Mar. 14, 2002).

**{¶24}** Although it is not the duty of this court to make arguments for any party, including a *pro se* party, when reading this entire argument, it appears to this court that the argument appellant is really trying to assert is a manifest weight of the evidence argument. Or in other words, it seems that appellant is contending that in weighing the evidence, the trial court lost its way. Consequently, we will address that issue.

**{¶25}** A review of a manifest weight of the evidence claim in juvenile delinquency adjudication is the same as for criminal defendants. *In re N.Z.*, 11th Dist. No. 2010-L-023, 2011-Ohio-6845, ¶ 78; *In re P.G.,* 12th Dist. No. CA2006–05–009, 2007–Ohio–3716, ¶ 13–14; *In re D.R.,* 10th Dist. No. 05AP–492, 2006–Ohio–5205; *In re R.S.,* 9th Dist. No. 21177, 2003-Ohio-1594, at ¶ 10.

**{¶26}** In determining whether a verdict is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" *Id.* A conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. *Id.* This is so because the trier of fact is in a better position to determine credibility issues, since it personally viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Hill*, 75 Ohio St .3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶27}** At the hearing, both Officer Sable and Officer Taggart testified that appellant failed the PBT and blew a .02. Tr. 18, 34. Officer Sable also indicated that it seemed to him that some of appellant's inhibitions were gone because while other people were reserved during the officers' questions, appellant was chatting with

people like nothing was going on. Tr. 14. Other than that, he explained that appellant did not exhibit any other signs of alcohol use or intoxication. Tr. 15.

{¶28} There were some discrepancies between the two officer's testimonies. For instance, Officer Sable testified appellant admitted to drinking by raising his hand when he and others were asked if they had been drinking. Tr. 13. Officer Taggart testified that individuals that admitted to drinking got their citation that night. Tr. 39. However, individuals that denied drinking were given the PBT. Tr. 39-40. He also testified that he personally witnessed appellant take the PBT. Tr. 38. Trooper White confirmed that testimony by indicating that he remembered administering appellant's breath test. Tr. 50.

{¶29} Officer Taggart's testimony insinuates that appellant denied drinking and that is the reason he had to take the PBT. However, Officer Sable testified that appellant admitted to drinking, but still had to take the breath test. Regardless of this discrepancy, both officers clearly indicate that appellant failed the breath test.

{¶30} The trial court, in addition to relying on the officers' testimony concerning the fact that appellant consumed alcohol that night, also stated that Trooper White testified that appellant tested positive for alcohol usage on the PBT. Appellant argues that the Trooper did not testify that he tested positive on the PBT. Rather, appellant claims the Trooper testified that he did not recall the results of every test he gave.

{¶31} A review of the transcript reveals that Trooper White testified that he did not "recall the results of each and every individual that [he] tested that night." Tr. 52. However, Trooper White was never specifically asked if he remembered the results of appellant's test. During a discussion on the admissibility of the PBT results, Trooper White explained that the PBT is not accurate as to the amount of alcohol in a person's system, rather it is just registers whether there is alcohol in a person's system. Tr. 56. He also stated:

> You was [sic] not given a breathalyzer test that night. You are not being convicted of a DUI. You were not driving a vehicle. You are being charged with underage alcohol consumption, that you were

consuming alcohol underage. So, the PBT shows that you had alcohol in your system that night.

Tr. 57-58.

{¶32} Given this testimony we do not find that the trial court's statement was incorrect. Regardless, even if the trial court should not have relied on this testimony, as is discussed below there is other evidence to support the adjudication.

{¶33} In addition to the Officers and Trooper's testimonies, the state called S.C. to testify. She avowed that she witnessed appellant drinking beer and at least one sip of Southern Comfort. Tr. 65-66. Appellant claims that her testimony was not credible. He asserts that S.C.'s testimony is not credible because she admitted to drinking, her voice was barely audible and she was hunched over in her chair, with her shoulders drooping and her head down.

{¶34} In discussing this argument, the first thing we must note is that we are a court of record and thus, can only review the record; we cannot consider matters outside the record. *State v. Oliver,* 7th Dist. No. 07MA169, 2008–Ohio–6371, ¶ 90. How S.C. was sitting at the witness stand and the inflection of her voice is a matter outside of the record. We only have a written transcript of the proceedings before us that does not explain the witness's demeanor or tone of voice. This is why the Ohio Supreme Court has clearly indicated that credibility is a decision that is best left to the trier of fact to decide. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The trier of fact has the opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility" of their testimonies. *Id.* Thus, for that reason we will typically not find a witness to not be credible when a trial court has already determined them to be credible.

{¶35} As to the fact that S.C.'s voice was barely audible, the record does disclose that both the trial court and the state during the beginning of her testimony were having trouble hearing her. The trial court did ask her to pull the microphone up a bit and indicated she was "soft spoken." Tr. 61. Likewise, the state asked her to use her "outside voice" because it was having trouble hearing her. Tr. 62. During

her 10 pages of testimony these were the only two instances where there were comments about the volume of her speech.

{¶36} The fact that a person is "soft spoken" is not a clear indication of lying. We see in many transcripts that witnesses are asked to speak louder and to pull the microphone in. For instance, even in this transcript appellant's mother was asked to pull the microphone closer. Tr. 102.

{¶37} Likewise, the fact that S.C. admitted to drinking that night does not necessarily make her testimony less credible. S.C. acknowledged that she was charged with underage consumption and that she accepted the deal that was offered to everyone. Tr. 63-64. She had to take a class, pay a fine and do community service. Tr. 63. She testified she had already completed the diversion program. Tr. 63.

{¶38} These facts do not necessarily make her less credible. She is admitting what she had done. Furthermore, nothing in the record suggests that she was offered a deal to testify against appellant. Rather the testimony shows she got the same deal everyone else did that admitted to underage consumption. Thus, she received no benefit from testifying and there is no indication that she has a reason for lying.

{¶39} Appellant argues that since she admittedly was consuming alcohol, her testimony is less credible because alcohol affects ones' memory. Appellant did not offer testimony from an expert as to the effect that alcohol has on a person's memory. Furthermore, S.C. testified that she only drank one beer. There was no testimony from anyone else to refute that testimony. Appellant now attempts to attach an affidavit from his friend stating that S.C. had consumed more than that. However, we cannot consider that affidavit. As previously mentioned, we can only consider what is in the record, i.e. what was before the trial court. That affidavit was not before the trial court and as such is not part of the record. Thus, considering her testimony, we cannot find that the trial court was wrong in finding S.C. credible.

{¶40} Additionally, concerning S.C.'s testimony, appellant argues that there were no other witnesses brought forth to testify that appellant was consuming alcohol

that night. The state subpoenaed approximately 20 juveniles to testify. Tr. 7. However, prior to trial the state released all but two. The reason those 18 were released was because they "do not have substantive information to give, either through lack of memory or through non-observation in the beginning." Tr. 8. Appellant argues that not a single one of the witnesses released corroborated S.C.'s story. The subpoenaed witnesses who did not testify are inconsequential in our review because they did not testify. While their testimony allegedly would not corroborate S.C.'s testimony, there is nothing to suggest that it would corroborate appellant's testimony that he did not drink. Those witnesses may either have not seen him that night or do not remember whether he was drinking. Thus, the argument does not support appellant's position and/or discredit the state's position.

{¶41} Appellant's theory of this case was that he had not been drinking and that the officers "doctored" the report that shows that he blew a .02 on the PBT and/or they mixed up his name by putting it in the pile with the individuals being charged with underage consumption when it should have been put with the individuals being charged with curfew violation.

{¶42} The testimony of Officer Taggart confirms that minors who blew zero on the PBT were told that they would be charged with a curfew violation. Tr. 41. However, when asked whether the complaint forms for the juveniles that were supposed to be charged with just a curfew violation were put together with the complaint forms for the underage consumption violations, the Officer stated that the information goes all in one report and they could not be mistaken. Tr. 41-42.

{¶43} At the hearing, an exhibit was offered by the state that contained Officer Taggart's handwritten notes of the results of the administered breath tests. Appellant objected to the introduction of this exhibit because it was not provided in discovery. Tr. 31-32. The state explained that it just received it that day. Tr. 32. The court gave appellant the opportunity to review the document. Tr. 31-32. After reviewing the document, appellant renewed his objections by stating he did not know if the document was just created recently or not. Tr. 32. The trial court informed him that he could ask the witness that question. Tr. 32. Appellant did ask that question.

Officer Taggart explained that this document was originally attached to the report, but they did not realize until that day that it was not included in the information that was given to the prosecutor. Tr. 35-36. He also explained that no information was added to this document later. Tr. 36. Officer Taggart testified that he was the one who wrote the test results on the document. Tr. 33. This document indicates that appellant was tested and that he blew a .02. Tr. 34.

**{¶44}** Trooper White was also asked about this document. He stated on both direct and cross-examination that Officer Taggart was standing beside him and he saw him write down the test results. Tr. 51-53, 55. He explained that it was a handwritten piece of paper with names written on it and the test results. Tr. 52. On cross-examination he further stated that the results were not added later. Tr. 55.

**{¶45}** Later when the state offered this handwritten document into evidence, the trial court asked appellant if he objected to the admission of the document. Tr. 78. He indicated he did not. Tr. 78. Thus, despite appellant's insistence to the contrary, the document was admitted without objection.

**{¶46}** Appellant's case also included testimony from two of his friends, his mother and himself. He testified that he did not drink alcohol and was playing water pong, not beer pong. Tr. 116.

**{¶47}** His mother testified that she personally witnessed the administration of the PBT and that his result was zero. Tr. 103. She also testified that appellant is a straight A student and an exceptional athlete. Tr. 105. He is the only member of the track team to qualify for Regionals in an individual event and that he is currently going to State on the 4X4 relay team. Tr. 105.

**{¶48}** His friend R.R. also testified that he did not see appellant drink and that they were playing water pong. Tr. 80, 83. However, R.R. admitted that he was not with the appellant the entire evening and that he would not know if appellant consumed any alcohol while appellant was not around him. Tr. 80, 84.

**{¶49}** Similarly, K.S. testified that appellant was not drinking that evening and that they were playing water pong. Tr. 91. K.S. also claimed that he was not drinking that evening and that he blew a zero on the breath test, yet he was still charged with

underage consumption. Tr. 90. However, instead of defending the charge, K.S. admitted to drinking and accepted the plea deal. Tr. 91.

**{¶50}** It is true that the trial court specifically indicated that K.S. was not credible because he earlier admitted to the charge of underage consumption, but was now claiming he did not drink or commit that offense. As explained above, credibility is a decision best left to the trier of fact. The trial court's conclusion that K.S. was not credible is upheld; the trial court's reasoning can justify its decision that K.S. is not credible.

**{¶51}** As the above testimony shows, this is a classic credibility case. There are two versions of what happened and the trial court, as the trier of fact, must determine which one it believes. Appellant and his two friends testified that he was not drinking. Appellant's mother testified that she witnessed the administration of the PBT and appellant blew a zero. The state offered testimony from two officers that appellant failed the breath test by blowing a .02. Furthermore, Officer Sable testified that appellant admitted to drinking and that his inhibitions were diminished. S.C., one of the party goers, testified that she witnessed appellant drinking.

**{¶52}** Considering everything, we cannot hold that the trial court lost its way. There was evidence to support the conclusion that was reached. In all, this assignment of error lacks merit.

<u>Second Assignment of Error</u>

**{¶53}** "The trial court erred when it overruled Appellant's Motion to Suppress in its Judgment Entry dated May 11, 2012, because Ohio Administrative Code 3701-53-02 'Breath Tests' does not approve Preliminary Breath Tests (PBTs) as evidentiary breath testing instruments."

**{¶54}** At the motion to suppression/motion to dismiss hearing, appellant agreed that the sole issue that he was arguing was whether the Trooper had the jurisdiction to go to Cadiz and administer the PBT:

> THE COURT: Mr. Washington [assistant prosecutor], then at that point the only thing that I'm going to ask of you is I will take the motion for -- to dismiss under review pending the briefs for both of you

to submit me within the next week on why a State Trooper has no authority to do a PBT test or assist an officer in their investigation. So, today is the 23rd. If I could have that on my desk by the 30th at 3 o'clock I will rule shortly thereafter.

Anything else that you want to put on the record, sir?

[J.J.M.]: No, Your Honor.

THE COURT: Anything else, Mr. Washington?

MR. WASHINGTON: Just – just to make sure that I am clear on exactly what issue we're looking at, it's solely on whether a State Trooper jurisdictionally can assist an officer to – to obtain a PBT –

THE COURT: Right.

MR. WASHINGTON: -- test. Okay.

THE COURT: Is that what you're arguing, sir?

[J.J.M.]: Yes.

THE COURT: Because I don't want to put words into your mouth.

[J.J.M]: Yes, that he was out of his jurisdiction to be there.

04/23/12 Suppression Tr. 21-22.

**{¶55}** Thus, the issue that he agreed was the sole issue to be resolved did not address the potential inadmissibility of a PBT because it is not an approved evidentiary breath test. In fact, a reading of the suppression transcript indicates that appellant wanted to discuss the results of the test; he called his mother to testify and she testified that she witnessed the administration of the PBT and that appellant blew a zero. 04/23/12 Suppression Tr. 9. Thus, the issue regarding whether the PBT was admissible because it is allegedly not an approved evidentiary breath test was not

properly raised to the trial court in suppression. Consequently, the argument is waived.

{¶56} However, for the sake of argument, we will address the admissibility of the PBT results. On the record, the state agreed that the PBT can only be used for probable cause. Tr. 44. Assuming without holding that this is a correct indication of what the law is, this would mean that a PBT can be used to show that there is probable cause for arrest. Thus, the PBT would not be relevant and would not be admissible once probable cause is found. Thus, the PBT would not and could not be used as evidence of guilt at the adjudication hearing.

{¶57} Therefore, if the state attempted to introduce the PBT and the results at the adjudication hearing and appellant objected to that admission, by the state's admission, the court should have deemed the evidence inadmissible. That said, the state did not introduce this evidence, rather it was appellant. The first discussion of the portable breath test being administered on appellant comes from appellant during the cross-examination of Officer Sable. Tr. 17-18.

{¶58} Thus, he is the one introducing the evidence. In fact, his opening statement indicates that the testimony is going to show that he passed the breath test. Tr. 10. Admitting testimony about the PBT and its results was part of his defense. Once appellant asked Officer Sable what the results of the PBT were, that allowed the state to ask that officer and any other witness about the PBT and the results; his questions opened the door to the state asking questions about the PBT and to admitting into evidence the handwritten document that contained the results. As the state points out, appellant cannot have it both ways; he cannot question witnesses about the PBT and test results and then claim that the state's questions and introduction of handwritten document evincing the results was not permitted.

{¶59} Furthermore, it must be noted that even if the admissibility of the PBT had been raised by appellant during the suppression hearing and even if the trial court deemed the PBT and its results inadmissible, at the point that appellant questioned Officer Sable about the PBT and results, appellant would have been inviting the error. The invited-error doctrine provides that a party cannot take

advantage of any alleged error that the party invited or induced. *State v. Lamar,* 95 Ohio St.3d 181, 767 N.E.2d 166, 2002-Ohio-2128, ¶ 103; *State v. Bell,* Clermont App. No. CA2008-05-044, 2009-Ohio-2335, ¶ 28. Thus, even if the PBT had been suppressed, appellant's questions would have amounted to invited error. For those reasons this assignment of error lacks merit.

{¶60} At this point, we note that the state claims that the PBT results were not being admitted to show what the level of alcohol was, but rather that alcohol registered in the juvenile's system. Thus, it appears to contend that it was admissible to show that the juvenile consumed alcohol. There is no definitive case law supporting that contention. The cases that discuss PBT always refer to their unreliability. If the machine is not reliable as to the amount of alcohol in ones' system, it is logical to conclude that the machine may not even be reliable as to whether there is alcohol in a person's system. The Fourth Appellate District has stated, "PBT results are considered inherently unreliable because they 'may register an inaccurate percentage of alcohol present in the breath, and may also be inaccurate as to the presence or absence of any alcohol at all.'" *State v. Shuler*, 168 Ohio App.3d 183, 2006-Ohio-4336, 858 N.E.2d 1254, ¶ 10 (4th Dist.), quoting *State v. Zell* (Iowa App.1992), 491 N.W.2d 196, 197. Thus, we do not rely on this argument to resolve this assignment of error.

Third Assignment of Error

{¶61} "The trial court erred when it found, in its Judgment Entry dated June 6, 2012, that the State of Ohio had met its burden of proof and proved beyond a reasonable doubt that the youth did consume or possess beer or an intoxicating liquor that evening because the evidence and testimony certainly left considerable doubt that appellant had committed the offense."

{¶62} This argument raises a sufficiency of the evidence argument. Sufficiency of the evidence is the standard applied to determine whether the case may go to the trier of fact or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Thus, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d

380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith* at 113.

**{¶63}** In performing a sufficiency review, an appellate court must consider "*all* of the testimony before the jury, *whether or not it was properly admitted.*" *State v. May*, 7th Dist. No. 10CO23, 2011-Ohio-6637, 970 N.E.2d 1029, quoting *State v. Peeples,* 7th Dist. No. 07MA212, 2009-Ohio-1198, 2009 WL 737922, at ¶ 17. *See also State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, at ¶ 19.

**{¶64}** Underage consumption as defined under R.C. 4301.69(E)(1) provides that, "[n]o underage person shall * * * consume any beer or intoxicating liquor in any public or private place." Underage person is defined as a person under the age of 21. R.C. 4301.69(H)(5).

**{¶65}** Under the first assignment of error we discussed at length the trial testimony. Officer Sable testified that appellant admitted to drinking and his talkative nature given the circumstances showed that his inhibitions were lowered. He also testified and appellant admitted that he was 16 years old at the time of the offense. Tr. 23, 117. Officer Taggart testified that appellant failed the breath test by blowing a .02. Also, S.C. testified that she witnessed appellant drinking at the party.

**{¶66}** Viewing this evidence in the light most favorable to the state, there was sufficient evidence to support a finding that appellant committed the offense of underage consumption. Thus, this assignment of error is without merit.

<u>Fourth Assignment of Error</u>

**{¶67}** "The trial court erred when it overruled the appellant's motion to Dismiss filed with the court on April 30, 2012."

**{¶68}** As aforementioned, at the suppression hearing, appellant dismissed his argument that a Fourth Amendment violation occurred, i.e. that the officers did not have permission to enter the house located on Warren Street. At the suppression hearing, the trial court ordered the parties to brief the only remaining issue, which

was whether the Trooper had jurisdiction to perform the PBT. In the April 30, 2012 brief that addressed that issue, appellant raised a new argument that he asserted warranted dismissal of the complaint. He contended that his Fourth Amendment rights were violated when the officers detained him to have the Trooper administer the PBT. He contended that there was no probable cause for the detention and thus, dismissal of the charge was warranted. The trial court overruled the motion. It stated that appellant had every opportunity to argue these allegations in his first motion to dismiss and that he voluntarily dismissed the alleged Fourth Amendment violations at the suppression hearing. It also indicated that the appellant is once again misstating Ohio law.

**{¶69}** Appellant is correct that at the suppression hearing he did not state that there were not any Fourth Amendment violations. All appellant stated was that his Fourth Amendment rights were not violated because he was not the owner of the house. 04/23/12 Suppression Tr. 18.

**{¶70}** That said, we do not hold that the trial court erred when it overruled the motion. The state is correct that Juv.R. 22(D) does not require a hearing for a secondary motion to dismiss.

**{¶71}** Furthermore, as the trial court correctly stated, appellant misstates Ohio law. Appellant claims in the motion that there must be probable cause to detain him to take the breath test. That is incorrect. The standard is reasonable, articulable suspicion, which is a lesser standard. A warrantless detention is reasonable under the Fourth Amendment to the United States Constitution if there was some articulable, reasonable suspicion of criminal activity to justify further investigation. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769 (1996), citing *Delaware v. Prouse*, 440 U.S. 659, 99 S.Ct. 1391 (1979), and *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, (1968). *See also State v. Erickson*, 76 Ohio St.3d 3, 7, 665 N.E.2d 1091 (1996).

**{¶72}** The testimony shows that appellant was found hiding in an attic of a house where a house party was occurring. There were open beer and intoxicating liquor containers found in the house. Appellant admitted to drinking and one officer

stated that appellant exhibited signs of diminished inhibitions, i.e. he was talkative in a somber situation. These facts present a reasonable, articulable suspicion that appellant may have been drinking. Thus, the officers were permitted to detain him for a breath test. This assignment of error lacks merit.

### Conclusion

{¶73} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
Waite, P.J., concurs.