[Cite as *Neuman v. Vettori*, 2021-Ohio-537.]

COURT OF APPEALS
MAHONING COUNTY, OHIO
SEVENTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| DOUGLAS NEUMAN | : | JUDGES: |
|  | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : | Sitting by Assignment by the |
|  | : | Supreme Court of Ohio |
| DIANE S. A. VETTORI | : |  |
|  | : | Case No. 2019 MA 00047 |
| Defendant-Appellant | : |  |
|  | : |  |
|  | : | OPINION |

CHARACTER OF PROCEEDING:     Appeal from the Mahoning County Court of
Common Pleas, Probate Division, Case No.
2018-CI-00027

JUDGMENT:     Affirmed in part; Reversed and Remanded
in part

DATE OF JUDGMENT ENTRY:     February 24, 2021

APPEARANCES:

For Plaintiff-Appellee

DOUGLAS J. NEUMAN
761 North Cedar Avenue, Ste. 1
Niles, OH 44446-2566

For Defendant-Appellant

JOHN B. JUHASZ
7081 West Boulevard, St. 4
Youngstown, OH 44512-4362

*Gwin, P.J.*

{¶1} Appellant Diane Vettori appeals the March 18, 2019 and April 4, 2019 judgment entries of the Mahoning County Court of Common Pleas, Probate Division.

*Facts & Procedural History*

{¶2} On November 6, 2018, appellee Douglas J. Neuman, Administrator WWA of the Estate of Dolores Falgiani and the Administrator of the Estate of Robert Sampson, filed a concealment of assets complaint against appellant Diane Vettori, Ismael Caraballo, Jr., Cynthia Henry, and Theodore Stalnacker. The complaint alleged, in part, as follows: Vettori provided legal services to Falgiani and developed a relationship of trust and confidence with her several years prior to her death; Sampson died, leaving his estate to Falgiani; Vettori was the attorney for Falgiani with respect to the estate of Sampson; Vettori failed to include substantial cash assets belonging to Sampson (in excess of $230,000) in his estate and assisted Falgiani in removing cash assets from a safe deposit box; Vettori convinced Falgiani to sell automobiles, through Vettori's associate, for less than fair market value; and after Falgiani died, Vettori and Stalnacker entered Falgiani's home and removed cash in excess of $340,000, jewelry, and other assets in excess of $10,000 belonging to the estate of Falgiani.

{¶3} The complaint avers that the estates of Sampson and Falgiani, "are entitled to the return of the assets wrongfully converted by the Defendants, Diane S.A. Vettori, Ismael Caraballo, Jr., Cynthia L. Henry, and Theodore E. Stalnacker, jointly and severally, as previously described herein, along with interest and statutory penalties as permitted by the Ohio Revised Code Section 2109.50." Subsequent to the complaint, the trial court issued a writ of citation to each of the named defendants.

{¶4} The trial court held a bench trial on December 18, 2018 and December 19, 2018. With consent of all counsel and because additional time was needed to conclude the trial, the trial court continued the trial to January 24, 2019 and January 25, 2019.

{¶5} Neuman filed a motion to settle the claim against Henry on January 25, 2019. The "mutual release and settlement agreement" was signed by Henry and notarized on January 23, 2019; it was filed and docketed on January 25, 2019. On February 12, 2019, Neuman filed a motion to settle the claim against Stalnacker.

{¶6} The trial court issued a judgment entry on February 14, 2019, setting a hearing on the motions to settle. The trial court conducted the hearing on the motions to settle on February 27, 2019. On March 14, 2019, the trial court approved the motion to settle with Stalnacker. On March 18, 2019, the trial court issued a judgment entry authorizing Neuman to settle the claim against Henry. Additionally, the trial court granted Caraballo's motion for directed verdict, finding the was evidence insufficient to support a finding of concealment of assets against him.

{¶7} Neuman filed an application for attorney fees on March 18, 2019. He attached Exhibit A, a detailed billing statement, to his motion. The trial court granted the motion.

{¶8} The trial court issued a judgment entry on the concealment of assets complaint and citation against Vettori on March 18, 2019. The trial court made extensive findings of fact and cited the testimony of Deane Hassman, F.B.I Special Agent, Christopher Engartner of Fox Funeral Home, Henry, and Stalnacker. The trial court specifically noted the testimony of Hassman that: from May 2, 2016 to June 3, 2016, Vettori made twenty-four structured cash deposits in nine of her personal or business

bank accounts in fifteen branches of multiple banks, totaling $100,200; Vettori's credit card debt at that time was $132,000 on fifty-three credit cards; these deposits enabled her to make payments of $58,997 on thirty-five credit cards; other than her statement that the money came from her deceased father, her deceased uncle, and from her husband's retirement fund, Vettori did not offer any proof of the source of the cash; and Hassman was unable to trace the funds to gift tax returns or returns from Vettori's law practice. The trial court also cited the testimony of Engartner who confirmed Falgiani had about $170,000 of cash in her house, approximately four shoe boxes full, that Falgiani did not put in the bank because she thought the money was safer in her home.

{¶9} The trial court found as follows: despite her experience as a probate attorney, Vettori filed documents (inventory, schedule of assets, amended inventory, amended schedule of assets, first partial account, final account, reports of newly discovered assets) which all omitted Falgiani estate assets that Vettori knew existed when she filed the forms with the court; and Vettori made a false statement to Judge Rusu at an October 2016 hearing when she told him she recently learned about savings bonds when in fact she had been in possession of $235,967.58 in bonds since March of 2016. The trial court further found that Vettori falsely represented to the court that Sampson did not own any estate assets at the time of his death and Vettori falsely represented to the court the amount of cash in Falgiani's house at the time of her death. The trial court concluded that Vettori willfully, wantonly, intentionally, and knowingly concealed, embezzled, or conveyed away $100,200 in cash from the Falgiani estate and caused a $2,115 loss to the Falgiani Estate by selling a 1994 Cadillac automobile for less than the vehicle's true value. Further, the trial court concluded that Vettori breached her legal and

fiduciary duties by filing false statements and making false statements to the court regarding estate assets; as a result, she should repay the amount she took in legal fees in the estate case, plus interest, plus any estate costs that she caused.

{¶10} The trial court assessed a total of $162,260.76 in damages against Vettori for the Falgiani estate as follows: $100,200 representing cash found the in home of Falgiani, but deposited in Vettori's bank accounts; $2,115 representing the loss on the sale of the 1994 Cadillac automobile; a ten percent penalty of $10,221.50; pre-judgment interest of $12,059.78; attorney fees of $22,332.13 for the concealment action; investigation costs of $13,906.35; and court costs in the concealment action of $1,426. The trial court also assessed a surcharge of $23,087.67, plus additional court costs of $180, for intentionally filing false documents and making false statements to the court.

{¶11} On April 4, 2019, the trial court issued a nunc pro tunc entry, finding that the correct amount of damages for the concealment action was $162,410.76, the amount of the surcharge was $23,267.67, for a total judgment of $185,678.43.

{¶12} Appellant appeals the judgment entries of the Mahoning County Court of Common Pleas, Probate Division, and assigns the following as error:

{¶13} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ASSESSING $12,059.78 IN PREJUDGMENT INTEREST, AS IT HAD NO LEGAL AUTHORITY TO DO SO.

{¶14} "II. APPELLANT WAS DENIED DUE PROCESS AND LIBERTIES SECURED BY OHIO CONST. ART. I, SECTION 16, WHEN THE FAIRNESS OF THESE PROCEEDINGS WAS COMPLETELY DESTROYED BY THE TRIAL COURT AND

APPELLEE ENGAGING IN EX PARTE COMMUNICATIONS AND OTHER IMPROPER
BEHAVIOR."

I.

{¶15} In her first assignment of error, appellant contends the trial court erred in
assessing $12,059.78 in prejudgment interest against her. Appellant argues that
prejudgment interest was improperly assessed in this case because the trial court did not
hold a hearing to determine whether the statutory requirements for assessing
prejudgment interest were met and there is no evidence in the record as to how the trial
court calculated the $12,059.78 figure.

{¶16} It is unclear from the record whether the trial court assessed prejudgment
interest pursuant to R.C. 1343.03(A) or R.C. 1343.03(C). Appellate courts have upheld
prejudgment interest assessments in probate court cases under both sections. *Bischoff
v. Bischoff*, 6th Dist. Huron No. H-05-005, 2005-Ohio-5879 (holding that a probate court
can assess prejudgment interest pursuant to R.C. 1343.03(A) because a probate
proceeding is an "other transaction" within the purview of R.C. 1343.03(A)); *Wozniak v.
Wozniak*, 900 Ohio App.3d 400, 629 N.E.2d 500 (9th Dist. Summit 1993) (though Ohio
common law does not allow prejudgment interest in civil actions based upon tortious
conduct, there is an exception for conversion actions and R.C. 2109.50 provides a
method of recovering estate property wrongfully converted; thus, probate court was
authorized to award prejudgment interest pursuant to R.C. 1343.03(C)); *In re Cawein*, 1st
Dist. Hamilton No. C-940885, 1995 WL 653853 (Nov. 1, 1995) (holding an award of
prejudgment interest was proper in a probate case where the decedent's property was

converted). However, R.C. 1343.03(A) and R.C. 1343.03(C) have different requirements and findings the trial court must make prior to awarding prejudgment interest.

{¶17} In this case, the trial court did not create a record capable of review by this Court. We cannot determine whether the assessment met the statutory requirements and/or how the trial court obtained the amount assessed. Appellant's first assignment of error is sustained. The prejudgment interest assessment of $12,059.78 is vacated, reversed, and remanded to the trial court.

## II.

{¶18} In her second assignment of error, appellant argues she was denied due process because the trial court and Neuman engaged in ex parte communications and other improper behavior.

{¶19} We first note that much of appellant's brief contains arguments about how the trial judge violated various Judicial Conduct Rules, including Judicial Conduct Rule 1.2 ("a judge shall act at all times in a manner that promotes public confidence in the independent, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety") and Judicial Conduct Rule 2.9, regarding ex parte communication. However, as this Court has previously stated, "a violation of the Judicial Code does not permit this court to reverse the trial court's adjudication determination * * * any allegation that the trial judge violated the Code of Judicial Conduct * * * [is] not properly brought before the court of appeals." *In re J.J.M.*, 7th Dist. Harrison No. 12 HA 2, 2012-Ohio-5605, quoting *Szerlip v. Szerlip*, 5th Dist. Knox No. 01CA09, (May 15, 2002). Thus, "allegations of judicial misconduct are not cognizable on appeal, but is a matter properly within the jurisdiction of the Disciplinary Counsel." *Id.*

{¶20} Appellant argues Neuman and the trial court engaged in improper ex parte communication, thus depriving her of due process.

{¶21} At the start of the January 25th portion of the trial, the trial judge stated Neuman presented him with a copy of a proposed settlement with Henry, and that he had not yet reviewed the proposal. Counsel for appellant objected to Neuman presenting the trial judge with the document without providing it to the remaining parties, characterizing it as an ex parte communication. The trial judge stated he had not yet reviewed the document. Counsel for appellant informed the trial court that the disclosure of the Henry settlement may expedite a settlement between Neuman and appellant and further informed the court, "we're not trying to impart any claim of impropriety, except by the very nature of an ex parte communication. In other words, what I'm saying to you is our concern isn't that a settlement is being presented to you * * * our complaint was that a settlement is being proffered to you without us receiving a copy of it * * *." Neuman apologized, and stated he would make copies of the settlement proposal to give to appellant's counsel that day. At the hearing on the applications to settle held on February 27, 2019, appellant withdrew her objection to the settlement applications.

{¶22} Appellant argues that the exhibit attached to Neuman's application for fees ("Exhibit A") filed on March 18, 2019, demonstrates an ex parte communication occurred between Neuman and the trial judge. The entries state as follows: 1/17/19 – review proposed settlement briefly; forward it to Judge Swift via Shannon; 1/18/19 – telephone conference with Judge Swift to see if he reviewed settlement agreement and discuss changes he requires; 1/20/19 – review changes required by Judge Swift; 1/21/19 – revise settlement agreement.

{¶23} When a party asserts that her due process rights were violated due to the other party's communication with the trial court, the complaining party must first produce evidence that the communication was actually ex parte. *State v. Jenks*, 15 Ohio St.3d 164, 473 N.E.2d 264 (1984). Though appellant argues the entries on Exhibit A establish that the trial judge received, reviewed, and revised the settlement proposal prior to January 25th, thus having substantive ex parte communication with Neuman, we disagree.

{¶24} The record is devoid of proof that the document Neuman presented to the trial court at the hearing on January 25th was the same document Neuman referenced in the entries contained in Exhibit A. Further, the entries in Exhibit A do not conclusively establish that the communication between Neuman and the trial judge involved substantive, rather than procedural, aspects of the litigation. *State v. Erie County Court of Common* Pleas, 6th Dist. Erie No. E-96-087, 1997 WL 327145 (June 2, 1997) (there is no violation when the communication involved non-substantive matters); *State v. Aidara*, 8th Dist. Cuyahoga No. 106971, 2019-Ohio-978 (stating a communication is not substantive if it does not address legal issues, facts in controversy, or law applicable to the case).

{¶25} Appellant contends that Neuman's presentation of the settlement document to the trial court either prior to or during the hearing, without immediately providing notice of it to appellant, was a violation of her due process rights, making the entirety of the concealment action unfair, and requiring a reversal of the judgment against her. She avers it does not matter whether the trial court actually looked at the document.

{¶26} We disagree with appellant. Even if an ex parte communication did occur, that is not of the end of the inquiry, as "the complaining party must still show some prejudicial impact from the ex parte communication." *State v. Sanders*, 188 Ohio App.3d 452, 2010-Ohio-3433, 935 N.E.2d 905 (10th Dist. 2010); *State v. Jenks*, 15 Ohio St.3d 164, 473 N.E.2d 264 (1984); *State v. Simmons*, 7th Dist. Jefferson No. 06 JE 4, 2007-Ohio-1570. There is not a conclusive presumption of prejudice. *State v. Aidara*, 8th Dist. Cuyahoga No. 106971, 2019-Ohio-978.

{¶27} Appellant has not demonstrated that she was prejudiced by the alleged ex parte communication. The settlement dealt only with the concealment action against Henry, not appellant. Further, this is a concealment action, in which appellant is a witness of the trial court, and the "character and extent of his examination rest largely in the court's discretion." *In re Estate of Fife*, 164 Ohio St. 449, 132 N.E.2d 185 (1956).

{¶28} Even if an ex parte communication occurred, it cannot be construed as prejudicial because, prior to deciding whether to approve the settlement, the trial court notified appellant of the settlement proposal, ensured Neuman provided all counsel with a copy of the settlement proposal, and gave appellant an opportunity at an oral hearing to make arguments, raise objections, and submit evidence as to the settlement agreement. See *In re Swader*, 12th Dist. Warren No. CA2000-04-036, 2001-Ohio-4191. Counsel for appellant received a copy of the proposed settlement with Henry on January 25, 2019. The trial court held a hearing on the application for settlement on February 27, 2019, during which appellant's counsel participated and stated as follows, "I will state for the record on behalf of the Defendant Vettori that an application to approve settlement has been provided to counsel; it is not an ex parte communication; that we have reviewed

those applications; and we have no objection to either the application to settle with Cynthia Henry or the application to settle with Ted Stalnacker."

{¶29} Appellant's sole argument as to prejudice is that the disclosure of the Henry settlement could have conceivably expedited a settlement with appellant. We find appellant's argument to be not well-taken and find no prejudice. Appellant had ample time and opportunity to settle with Neuman after having a copy and full knowledge of the content of the proposed settlement with Henry on January 25, 2019. The trial court did not issue its judgment entry on the concealment action against appellant until March 18, 2019. According to Neuman's Exhibit A, counsel for appellant engaged in settlement discussions with Neuman over one month after knowing the full terms of the proposed settlement with Henry. Exhibit A states that on March 7, 2019, Neuman had a "conference with court and other counsel to discuss settlements with Henry, Stalnacker, and Vettori; Call Attorney Ingram and make an introductory offer." Further, on March 15, 2019, Neuman "reviewed response to * * * offer to settle" that Vettori rejected and "rejected counter-offer" by Vettori.

{¶30} In addition to the alleged ex parte communication, appellant lists two other instances of alleged improper behavior. First, appellant claims that Neuman violated the separation of witnesses' order. The first instance noted by appellant occurred when Hassman was in the courtroom as Neuman called Vettori to the stand. However, it was Caraballo who objected to Hassman being in the courtroom and the discussion as to whether the separation order applied when Vettori was testifying only to assert her Fifth Amendment right against self-incrimination, was between Caraballo and Hassman, not Neuman. Prior to Vettori taking the stand to assert her Fifth Amendment right against

self-incrimination, Hassman left the courtroom. Thus, there was no violation of the separation of witnesses' order. We find no improper behavior by Neuman or the trial court denying appellant due process or calling into question the fairness of the proceedings.

{¶31} Appellant also alleges that Neuman and Hassman had lunch in the courtroom and Neuman shared with Hassman testimony from Stalnacker, in violation of the separation of witnesses' order. In this concealment action, the court conducts the required investigation by examining, under oath, the respondent and any witnesses; this examination is largely within the trial court's discretion. *In re Estate of Fife*, 164 Ohio St. 449, 132 N.E.2d 185 (1956). Issues surrounding the separation of witnesses and any sanctions for failing to comply with such an order are within the sound discretion of the trial court and, an appellate court must "keep in mind that 'the preferred sanction is simply to allow the transgression to reflect upon the witness's credibility.'" *State v. Hohvart*, 7th Dist. Mahoning No. 06 MA 43, 2007-Ohio-5349, quoting *State v. Williams*, 2nd Dist. No. 97-CA-0131 (Oct. 16, 1998). Appellant had the opportunity to extensively cross-examine both Hassman and Neuman about this alleged violation of the separation order. We find no improper behavior or denial of appellant's due process, but instead find this was an issue of credibility of the witnesses to be determined by the trial court.

{¶32} Appellant also contends the probate court investigators improperly met with the trial judge privately, "as revealed in their fee applications submitted under the Falgiani estate." First, appellant did not appeal the Falgiani estate case. Further, despite being served with each of the fee applications, appellant did not object to either the fee application filed on January 23, 2019 or the fee application filed on March 12, 2019.

{¶33} Additionally, the probate judge has the authority to appoint investigators to perform duties established for a probate court investigator by the Revised Code or the probate judge. R.C. 2101.11(A)(2)(a). This is a concealment of assets case pursuant to R.C. 2109.50, in which the court investigates the charge and controls the examination of the respondent. *In re Estate of Fife*, 164 Ohio St. 449, 132 N.E.2d 185 (1956). In the March 1, 2018 judgment entry of the trial court appointing the investigators, the trial court stated the parties could have access to the confidential report prepared by the investigators. We find no improper behavior denying appellant due process with regards to the investigators appointed by the trial court.

{¶34} Upon review, we find none of appellant's assertions of improper behavior of Neuman and/or the trial court, either together or separately, denied appellant due process or a fair proceeding. Appellant's second assignment of error is overruled.

{¶35} Based on the foregoing, appellant's first assignment of error is sustained. Appellant's second assignment of error is overruled.

{¶36} The judgment entries are affirmed in part, and reversed in part. The prejudgment interest assessment of $12,059.78 is vacated, reversed, and remanded to the trial court, for further proceedings consistent with this opinion.


By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur




WSG:clw 1016